**DIGITEL, INC., Plaintiff–Appellant,**

v.

**MCI WORLDCOM, INC., Defendant–Appellee.**

No. 00–7800.

United States Court of Appeals, Second Circuit.

Argued: Jan. 10, 2001.

Decided: Feb. 2, 2001.

David J. Aronstam, New York, NY, for Plaintiff–Appellant.

Patrick C. Dunican, Jr., Gibbons, Del Deo, Dolan, Griffinger & Vecchione, New York, N.Y. (Jeannie Yim, Worldcom, Inc., Washington, D.C., on the brief), for Defendant–Appellee.

Before VAN GRAAFEILAND and CALABRESI, Circuit Judges, and PATTERSON,* District Judge.

PER CURIAM:

Plaintiff-appellant Digitel, Inc., a provider of telecommunications services, brought suit in the United States District Court for the Southern District of New York (Owen, *Judge*) alleging that defendant-appellee MCI Worldcom, Inc. ("WorldCom"[1]) wrongfully permitted Digitel's toll-free telephone number to be transferred to another customer, thereby destroying Digitel's business. While WorldCom's motion to dismiss was pending, the district court, relying on a ground not raised in the motion, dismissed *sua sponte* Digitel's complaint for lack of subject matter jurisdiction. The court held that an enraged letter sent by a Digitel executive to the Federal Communications Commission ("FCC") was an "informal complaint" to the FCC, and thereby con-

---

* The Honorable Robert P. Patterson, Jr., United States District Judge for the Southern District of New York, sitting by designation.

1. Through a series of name changes, the entity previously known as MCI Telecommunications Corporation became MCI WorldCom and now simply WorldCom.

stituted a binding election by Digitel to pursue its remedies before the agency and not in federal court. We affirm.

The facts of the underlying dispute, as alleged in Digitel's complaint, could not be simpler. Beginning in October 1993, Digitel established as its toll-free number 1–800–ISDN–TO–U, a number that it disseminated widely through many media. In August 1997, Digitel and WorldCom agreed that WorldCom would become the "Responsible Organization" for the number, taking over that role from Sprint. All was well until January 2, 1998, when customers dialing 1–800–ISDN–TO–U suddenly stopped being connected to Digitel and instead found their calls directed to an unrelated entity. According to the allegations, this occurred because WorldCom failed to take appropriate steps to reserve the number's use to Digitel, thereby allowing AT&T to become the Responsible Organization for the number and to assign it to another user. Despite vigorous protests from Digitel, WorldCom failed to take prompt action to reinstate the number, leaving Digitel in limbo until March 12, 1998, when service was abruptly restored. By then, however, it was too late, and the disruption in service had ruined Digitel's business. Digitel alleges that WorldCom's misconduct was "willful" in character.

In December 1999, Digitel brought suit in federal district court. The Amended Complaint alleges that the above-stated acts constituted violations of the Communications Act of 1934, 47 U.S.C. § 151 et seq., the tariff under which WorldCom provided the number to Digitel, and federal common law. WorldCom moved to dismiss, arguing that plaintiff failed to state a claim and

that, even if it did, the district court should stay the action and refer Digitel's claims to the FCC under the primary jurisdiction doctrine, see generally National Communications Ass'n v. AT&T, 46 F.3d 220 (2d Cir.1995). In support of its motion, defendant attached the first two pages of an October 29, 1999 letter from Marc S. Paler, Digitel's President, to the FCC's Consumer Protection Branch (the "letter" or "FCC letter"). The letter, which characterized itself as "an informal complaint," expressed outrage at the conduct of both WorldCom and the FCC, claiming that "your commission's rules and orders governing companies like MCI gave them carte blanche to destroy other companies at will" and querying, "Sure sounds like state sponsored economic terrorism, doesn't it??????"

After oral argument on defendant's motion, the district court, in a one-paragraph order, ruled that the FCC letter "effects a forum selection" that precluded subject matter jurisdiction in the district court. The court also "note[d] that the FCC is proceeding." As authority for its decision, the court cited 47 U.S.C. § 207, which provides that a person claiming injury by a common carrier "may either make complaint to the Commission as hereinafter provided for, or may bring suit ... in any district court of the United States ... but such person shall not have the right to pursue both such remedies." It also cited a Fifth Circuit decision, Stiles v. GTE Southwest, Inc., 128 F.3d 904, 907 (5th Cir.1997). In dismissing on this ground, the district court acted without any notice to the parties that it thought that a fundamental prerequisite to the suit was in question.[2] The previous briefing on the

---

**2.** With great respect to the busy district court, we note that such lack of notice—even when the court has authority to act sua sponte—is to be avoided. See Snider v. Melindez, 199 F.3d 108, 112–13 (2d Cir.1999) (distinguishing between a "spontaneous" ruling without notice and a "sua sponte" motion followed by consideration of party submissions, and noting that it is generally "bad practice for a

district court to dismiss without affording a plaintiff the opportunity to be heard in opposition" unless it is "unmistakably clear that the court lack[ed] jurisdiction"). The district court's decision without notice to the parties and without giving the parties a greater opportunity to develop the record on relevant facts, such as whether Digitel's letter actually constituted an informal complaint and wheth-

motion to dismiss had contained no citation to § 207 or to *Stiles.* Digitel's motion for reconsideration was denied; it now appeals.

## Discussion

■ WorldCom argues both that Digitel's FCC letter ousted the district court of jurisdiction and that, even if it did not, dismissal was appropriate under the primary jurisdiction doctrine. We agree that, under § 207, Digitel's filing with the FCC bars it from proceeding in district court. Because we affirm on that ground, we need not address WorldCom's alternative primary jurisdiction argument.

■ There can be no doubt that § 207 permits an injured party to seek relief either in federal court or before the FCC, but not in both. *See Stiles,* 128 F.3d at 907; *Cincinnati Bell Tel. Co. v. Allnet Communication Servs., Inc.,* 17 F.3d 921, 923 (6th Cir.1994); *RCA Global Communications, Inc. v. Western Union Tel. Co.,* 521 F.Supp. 998, 1005–06 (S.D.N.Y.1981). The question here is whether the district court properly concluded that Digitel's letter was an invocation of the FCC's jurisdiction sufficient to trigger § 207's forum selection rule. We construe the district court's order as one deciding a *sua sponte* Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, and we review that decision *de novo. See Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000).

Section 207 requires a choice between litigation and a "complaint to the Commission *as hereinafter provided for*" (emphasis added). And the Commission has, pursuant to its authority under 47 U.S.C. § 208 (providing that any person may "apply to [the] Commission by petition" for relief), promulgated regulations establishing (and hence defining) a complaint process. *See* 47 C.F.R. § 1.701 *et seq.* These regulations recognize two distinct forms of "complaint": "informal complaints" and "formal complaints," and they establish that "an informal complaint shall be in writing and should contain" the name, address, and telephone number of the complainant, the target of the complaint, a statement of the facts underlying the complaint, and the specific relief sought. 47 C.F.R. § 1.716.

■ We agree with the Fifth Circuit that, under these regulations, the filing of an "informal complaint" constitutes a "complaint to the Commission" for § 207 purposes, and that, therefore, a party that has filed an informal complaint may not also sue in district court.[3] At oral argument both on appeal and in the court below, Digitel conceded that its filing constituted an "informal complaint" and that the FCC had scheduled a hearing on the matter.[4] Accordingly, we need not decide exactly which communications to the FCC will qualify as "informal complaints" sufficient to trigger application of § 207.

---

er the FCC had exercised jurisdiction, might well have required an otherwise potentially avoidable remand. *See id.* at 113 (noting that "denying a plaintiff an opportunity to be heard may tend to produce the very effect the court seeks to avoid—a waste of judicial resources—by leading to appeals and remands" (internal quotation marks omitted)).

3. Because Digitel has not raised the fact that, originally, WorldCom had not relied on § 207's forum selection provision, we have no occasion to decide whether to treat the provision as creating a *jurisdictional* bar to bringing suit, or whether it should be treated instead as establishing a waivable non-juris-

dictional prerequisite to suit. *Cf. Francis v. City of New York,* 235 F.3d 763 (2d Cir.2000) (distinguishing jurisdictional prerequisites from conditions precedent to bringing suit).

4. At oral argument before Judge Owen, Digitel raised the possibility of staying its complaint before the FCC in order to allow its lawsuit to proceed. It has not, however, renewed this suggestion on appeal, nor has it made any attempt to stay or withdraw its administrative complaint. As a result, we do not consider here how such a voluntary stay or dismissal would affect the operation of § 207.

■ Of course, the filing of an informal complaint with the FCC does not bar the complainant from bringing *all* claims, no matter how unrelated, in district court. Instead, there must be a nexus between the claims in the two forums that is sufficient to bring § 207 into play. Thus, district courts in this Circuit have allowed suits to go forward, notwithstanding parallel proceedings before the FCC, where the complaints at issue have arisen out of distinct disputes between the same parties or where the FCC complaints have sought only equitable relief, in contrast to claims for money damages in federal court. *See Cancall PCS v. Omnipoint Corp.*, No. 99 CIV 3395 AGS, 2000 WL 272309, *10 (S.D.N.Y. Mar. 10, 2000); *RCA Global Communications*, 521 F.Supp. at 1005–06. Assuming without deciding that these authorities draw valid distinctions, Digitel derives no benefit from them because its complaints to the FCC and in the district court plainly arise out of the same facts, and because money damages are the only relief its informal complaint, submitted as it was well after WorldCom restored its phone service, can be read to seek.[5] Accordingly, we need not decide exactly what nature and degree of overlap between administrative complaints and suits in district court are necessary to trigger § 207's bar, because in this case Digitel has failed to identify any substantial distinction between its two actions.

We have considered all of appellant's arguments, and, finding them to be without merit, we AFFIRM the judgment of the district court.

---

**5.** As Digitel points out, the FCC letter does not explicitly demand monetary relief, or, indeed, any specific relief at all. Although this point might have supported an argument that the letter was just what might be called a gripe, and not even an "informal complaint" as that term is defined in the FCC regulations, appellant disclaimed such a theory at oral argument. In light both of Digitel's concession that it was complaining to the FCC and its failure to identify anything that it *was* seeking from the FCC that differed from what it sought in the court below, we see no basis for treating the two complaints as having anything but the same subject matter.