United States Court of Appeals
**Fifth Circuit**

**F I L E D**

**February 16, 2006**

**Charles R. Fulbruge III**
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-41574

PREMIERE NETWORK SERVICES, INC.,

Plaintiff-Appellant,

v.

SBC COMMUNICATIONS, INC.; SOUTHWESTERN BELL TEXAS
HOLDINGS, INC.; SWBT TEXAS LLC; SOUTHWESTERN BELL
TELEPHONE LP, FORMERLY KNOWN AS SOUTHWESTERN BELL
TELEPHONE COMPANY,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BEAM,[1] and BARKSDALE, Circuit Judges.

BEAM, Circuit Judge.

This case involves a long-standing and procedurally complicated dispute between Premiere Network Services, Inc. (Premiere) and SBC Communications, Inc. and its affiliates (collectively SBC) over access to telephone services and facilities. The district court granted SBC's motion to dismiss and Premiere appeals. We affirm in part and reverse in part.

---

[1]Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I. BACKGROUND

Under the regulatory regime of the Federal Telecommunications Act of 1996 (FTA), Premiere is a competitive local exchange carrier (CLEC) in the Texas telecommunications market. SBC and its affiliated entities comprise an incumbent local exchange carrier (ILEC), controlling most of the cables, poles, and systems necessary to provide telephone exchange service to a particular area. Pursuant to the FTA, Premiere operates under an interconnection arrangement with SBC called a "T2A" agreement[2] that regulates the business relationship between the two companies.

This appeal grows out of a somewhat convoluted chain of litigation. In January 1999, Premiere filed a complaint against SBC with the Texas Public Utilities Commission (TPUC), alleging violations of the T2A, the FTA, state law, and orders of the TPUC. Premiere claimed that the violations stymied competition in the local telecommunications market. In November 1999, Premiere and SBC executed a Confidential Joint Settlement Agreement and Release

---

[2]"T2A" is short for "Texas 271 Agreement," which refers to 47 U.S.C. § 271. This section provides for Bell operating companies to enter into interLATA service in a region. A LATA, or Local Access and Transport Area, is a contiguous geographic area comprised of one metropolitan area within the same state that is served by a telecommunications company. InterLATA service is telecommunications service between a point within and a point outside a LATA. Providing interLATA service requires review by both the specific state utilities commission and the Federal Communications Commission for compliance with section 271.

2

(Settlement Agreement), and the parties jointly moved to dismiss Premiere's complaint with prejudice. In December 1999, the TPUC granted the motion.

In May 2002, Premiere filed a formal complaint against SBC with the Federal Communications Commission (FCC) alleging discriminatory and anti-competitive practices regarding access to "555" telephone numbers.[3] In November 2002, Premiere filed a motion to dismiss the proceeding without prejudice, based on concerns that the record was flawed, and asserting that dismissal would conserve the parties' and FCC's resources. In June 2003, the FCC granted the motion, citing Premiere's optimism that the parties could resolve their dispute in some other way. The FCC noted that it does not have a specific rule for dismissing formal complaints, but found instructive Federal Rule of Civil Procedure (FRCP) 41(a)(2), which provides a court discretion to dismiss an action upon the plaintiff's request under terms and conditions set by the court. The FCC declined SBC's request that it treat Premiere's motion as a motion to dismiss with prejudice per FRCP 41(a)(1) since Premiere had previously filed a related complaint with the

---

[3]A "555" telephone number is a number assigned by the North American Numbering Plan Administration (NANPA) to a particular entity, which can use the number to access sundry information. Until 1992, these numbers were used mostly for directory assistance. At that time, the telecommunications industry determined that "555" numbers should be used in a wider variety of ways, and NANPA began assigning "555" numbers in 1994.

TPUC. The FCC dismissed the proceeding without prejudice. Citing FRCP 41(a)(2), the FCC added a condition to the dismissal requiring that if Premiere should file a complaint against SBC with the FCC within one year of the dismissal raising materially similar facts and legal issues, Premiere would provide SBC an exhibit comparing the new complaint with the current complaint, to aid SBC in preparing for the new case.

Then, in October 2003, Premiere filed the instant action against SBC in the United States District Court for the Southern District of Texas. Premiere asserted claims for (1) violations of sections 201, 202, 251(b), 251(c), and 251(e) of the FTA; (2) breach of fiduciary duty; (3) fraud under the T2A; (4) fraudulent inducement to enter an April 2001 settlement agreement;[4] (5) breach of contract (the T2A); (6) fraudulent inducement to enter the November 1999 settlement agreement; (7) breach of contract (the November 1999 settlement agreement); (8) tortious interference with prospective contract; and (9) tortious interference with contract.

The district court noted that either section 252(e)(6) or section 207 could provide the court with jurisdiction under the FTA, but that Premiere did not specify under which section it

---

[4]For clarity, we note that only Premiere's claims related to the November 1999 settlement agreement, and not those related to the April 2001 settlement agreement, are now before us on appeal.

brought its claims.  The court estimated that since Premiere and SBC were parties to an interconnection agreement, the source of federal jurisdiction for the suit was likely section 252(e)(6), but the court analyzed the claims under both sections.

Under section 252(e)(6), the district court found that all of Premiere's federal claims were subsumed within the T2A.  The court dismissed Premiere's federal claims without prejudice, apparently for lack of subject matter jurisdiction, finding that section 252(e)(6) contemplates exhaustion of administrative remedies  for disputes over interconnection agreements before a state public utilities commission, which exhaustion had not yet occurred.[5]  The

---

[5]Given the Supreme Court's recent reminder in Eberhart v. United States, 126 S. Ct. 403 (2005), that courts be precise in their use of the term "jurisdiction," we make the following observation.  See id. at 405 (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004) for the proposition that clarity would be advanced "'if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.'").  Because the district court dismissed Premiere's claims under section 252(e)(6) for Premiere's *failure to exhaust* administrative remedies, it would have been more accurate for the court to have framed its dismissal in terms of Premiere's *failure to state a claim*, and not in terms of the court *lacking jurisdiction*.  "Whenever the Congress statutorily mandates that a claimant exhaust administrative remedies, the exhaustion requirement is jurisdictional . . . ."  Taylor v. United States Treasury Dep't, 127 F.3d 470, 475 (5th Cir. 1997).  But where a statute does not textually require exhaustion, only the jurisprudential doctrine of exhaustion controls, which is not jurisdictional in nature.  Id.  Section 252(e)(6) does not expressly require exhaustion of administrative remedies, thus only the jurisprudential doctrine of exhaustion is applicable.  Under

court also dismissed what it termed Premiere's "state law" claims without prejudice, declining to exercise supplemental jurisdiction over them, and noting that there was no diversity jurisdiction since both parties are citizens of Texas.

Under section 207, the district court stated it would dismiss Premiere's claims on two bases. First, it said that those claims (the court did not differentiate between state or federal) with a nexus to the "555" number dispute would have to be dismissed, apparently for lack of subject matter jurisdiction, because of Premiere's earlier filing of that dispute with the FCC. The court said that those claims with such a nexus were: (1) violations of section 251(e)(1) of the FTA; (2) fraudulent inducement to enter the November 1999 settlement agreement; (3) breach of contract (the November 1999 settlement agreement); (4) tortious interference with prospective contract; and (5) tortious interference with contract. The court did not agree with Premiere that the FCC's dismissal without prejudice of those claims allowed Premiere to litigate them in federal court. Second, the court stated that if it had jurisdiction under section 207 over Premiere's remaining claims, it

_____

that doctrine, Premiere likely *failed to state a claim* under section 252(e)(6) because "'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Id. at 476 (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)).

6

would defer to the primary jurisdiction of the TPUC for those claims.

Premiere appeals the dismissal of its "555" number-related claims under section 207.[6]

## II.  DISCUSSION

We review *de novo* a district court's dismissal based on lack of subject matter jurisdiction.  <u>Stiles v. GTE Southwest, Inc.</u>, 128 F.3d 904, 906 (5th Cir. 1997).

### A.    Effect of Filing With FCC on Application of Section 207

Premiere first argues that section 207 does not bar its "555" number-related claims from federal court.  The statutory provision at issue in this appeal, 47 U.S.C. § 207, provides that

> [a]ny person claiming to be damaged by any common carrier
> subject to the provisions of this chapter may either make
> complaint to the Commission as hereinafter provided for,
> or may bring suit for the recovery of the damages for

---

[6]Premiere does not appeal the district court's dismissal of its federal claims under section 252(e)(6).  As such, we express no opinion as to the merits of the court's application of that section to Premiere's assertions, and we assume that Premiere concedes that if section 252(e)(6) applies, its federal claims require exhaustion before the TPUC.

which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207. The district court pointed to our decision in Stiles in deciding that since Premiere had earlier filed a formal complaint with the FCC regarding the "555" dispute, it could not later bring claims related to that same dispute into federal district court. In Stiles, appellant had filed an informal complaint with the FCC against GTE Southwest. Appellant later sued GTE Southwest in federal court, seeking damages under the FTA. The central issue in that case was whether section 207 barred the filing of claims in federal court that had already been brought to the FCC through an informal, as opposed to formal, complaint. The Stiles court held that section 207 draws no distinction between formal and informal proceedings. In interpreting the statute, the court determined that the language of section 207 "is unambiguous: A complainant can file a complaint either with the FCC or in federal district court, but not in both." 128 F.3d at 907. The court concluded that "§ 207 precludes a complainant from filing suit in federal court *once she has initiated* the administrative complaint process with the FCC either by filing a formal or informal complaint." Id. (emphasis added).

8

Premiere asserts that the holdings in Stiles and other similar cases, some of which rely on Stiles, are bounded by their factual context:  the litigants in those cases brought a federal claim either while their complaint with the FCC was pending, or after the FCC had issued a final determination.  Premiere asserts that those cases bar simultaneous actions, or actions in federal court following a final disposition by the FCC, but that neither situation applies in this case.  See id. at 905-06 (noting that the defendant-appellee GTE sought to attach a copy of the plaintiff-appellant's informal complaint and FCC final determination letter to its motion to dismiss); Mexiport, Inc. v. Frontier Commc'ns Servs., Inc., 253 F.3d 573 (11th Cir. 2001) (holding that appellant could not file in federal court after having filed informal complaint with FCC, in case where FCC had completed informal complaint process); Digitel, Inc. v. MCI WorldCom, Inc., 239 F.3d 187, 190 (2d Cir. 2001) (concluding that "a party that has filed an informal complaint [with the FCC] may not also sue in district court," in case where district court had dismissed appellant's case in part because FCC was proceeding with informal complaint process); Cincinnati Bell Tel. Co. v. Allnet Commc'n Servs., Inc., 17 F.3d 921 (6th Cir. 1994) (deciding that appellant could not have filed a counterclaim in the district court on the same dispute that was the subject of its FCC complaint, in case where appellant's FCC complaint was pending at the time of federal court litigation);

9

<u>Bell Atlantic Corp. v. MFS Commc'ns Co.</u>, 901 F. Supp. 835 (D. Del. 1995) (holding that the district court did not have jurisdiction to hear complaint on same issues brought to the FCC, in case where appellant's FCC complaint was still pending).

While Premiere points out substantial factual differences between <u>Stiles</u>, the other cited cases, and this case, we do not find the argued distinctions persuasive. Though it appears that either an FCC complaint was pending or the FCC had made a final determination in <u>Stiles</u>, <u>Mexiport</u>, and <u>Digitel</u>, those cases do not condition their holdings on those facts. Rather, their decisions are couched in terms of the appellant having *initiated* or *filed* a complaint with the FCC. The determination in <u>Bell Atlantic</u> in particular seems to stand apart from the fact that a complaint was pending with the FCC. Appellant in that case argued that inaction by the FCC on its complaint allowed it to file in federal court. But the court stated that appellant "offer[ed] no explanation as to why or how its choice of fora becomes, in a sense, 'reset' in the face of FCC inaction. Title 47 offers no indication that a party's election of fora, once made, is anything but irrevocable." 901 F. Supp. at 852-53. The court concluded that "[b]y the terms of § 207, the choice to proceed in one or the other available forum destroys jurisdiction in the remaining body; the electing party

10

must then accept and work through the problems of reaching a judgment."  Id. at 853.

We agree with the weight of authority that section 207 is an election-of-remedies provision, and we now amplify our holding in Stiles: once an election is made by either filing a complaint with the FCC or filing a complaint in federal court, a party may not thereafter file a complaint on the same issues in the alternative forum, regardless of the status of the complaint.  As the court in Bell Atlantic pointed out, this has the effect of preventing "duplicative adjudications and inconsistent results between [federal court] and the FCC."  Id.  It also avoids giving a complaining party several bites at the apple through dismissal and re-filing of  complaints, thereby upholding judicial efficiency and fairness to responding parties.

**B.   Effect of Voluntary Dismissal on Filing Status**

Premiere alternatively argues that the voluntary dismissal of its complaint with the FCC prior to a decision essentially "un-files" the complaint with the FCC just as it would in federal court under FRCP 41(a)(2), and "'leaves the situation as if the action never had been filed.'" Br. for Appellant 7 (quoting Long v. Bd. of Pardons and Paroles of Texas, 725 F.2d 306, 307 (5th Cir. 1984)).

Applying that reasoning under our interpretation of section 207, Premiere would not be barred from filing suit in federal court since essentially no election would have yet been made. Premiere offers no precedent in support of this assertion, nor have we found any. True, the FCC, in its order of dismissal, found FRCP 41(a)(2) instructive, but only for the proposition that the rule leaves the decision to dismiss within the sound discretion of courts, and not for the reason that dismissal under the rule would "un-file" the action. Regardless of their applicability, which we do not decide here, we would not read the Federal Rules of Civil Procedure in such a way as to defeat the clear statutory election-of-remedies provision of section 207.[7] We decline to adopt Premiere's "un-filing" argument.

## C. Disposition of Premiere's "555" Number-Related Claims Arising Under Confidential Joint Settlement Agreement

After finding that section 207 divested it of jurisdiction, the district court proceeded to consider which of Premiere's claims would be barred from federal court. The results of this exercise create some uncertainties that we now address.

---

[7]Even if we were to strictly apply FRCP 41(a)(2), we would have to recognize that the FCC conditioned its dismissal of Premiere's complaint in such a way that it anticipated that any subsequent legal action by Premiere would take place before the FCC, not in federal court.

Since Premiere's complaint to the FCC dealt with the "555" number dispute, the court, citing Digitel, determined that all claims with *any* nexus to that issue are barred by section 207, and must be brought to the FCC for adjudication. In Digitel, the court stated "[o]f course, the filing of an informal complaint with the FCC does not bar the complainant from bringing *all* claims, no matter how unrelated, in district court. Instead, there must be a nexus between the claims in the two forums that is *sufficient* to bring § 207 into play." (Emphasis added). 239 F.3d at 191. The claims seemingly relegated to the FCC by the district court under its section 207 analysis include those for breach of the Settlement Agreement, fraudulent inducement to enter into the Settlement Agreement, tortious interference with contract and tortious interference with prospective contractual relationships.

Premiere argues that these claims were never before the FCC in the earlier "555"-related complaint and thus are not subject to a section 207 election because they are based only on the Settlement Agreement. In response, SBC, relying upon Digitel, asserts that because Premiere's contract and tort claims are inextricably intertwined with its FTA-based "555" number dispute, Premiere cannot establish them as distinct and separable matters. We disagree.

13

We note that the district court's conclusions with regard to these competing arguments are less than precise. The court's statements under its section 252(e)(6) analysis concerning dismissal of state-law claims and rejection of supplemental jurisdiction seem, at least on their face, to conflict with the court's evaluation of the nature of the identical claims for section 207 purposes. In this regard, the district court stated that "all of Premiere's claims with a nexus to the '555' service must be brought before the FCC." Premiere Network Servs., Inc. v. SBC Commc'ns, Inc., No. C-03-418, slip op. at 13 (S.D. Tex. Aug. 19, 2004). It also stated, without again mentioning a lack of diversity jurisdiction or that it would forego exercising supplemental jurisdiction, that

> [t]hose claims that must be dismissed by this court under Section 207 [presumably to FCC jurisdiction] are: violations of Sections 251(e)(1), fraudulent inducement to Settlement Agreements based on "555" numbers, breach of contract for Settlement Agreements, tortious interference with prospective contract, and tortious interference with existing contract.

Id. Thus, the district court appears to make no jurisdictional distinction in its 207 analysis between federal statutory claims and claims that it earlier recognized as state causes of action, apparently directing them all to FCC jurisdiction. To the extent

14

that we have accurately read the district court's opinion, we disagree with this result.

Section 207 grants federal court (or FCC) jurisdiction over only FTA-created claims. Statutes granting federal court jurisdiction "'are to be construed "with precision and with fidelity to the terms by which Congress has expressed its wishes,"'" Bread Political Action Committee v. FEC, 455 U.S. 577, 580 (1982) (quoting Palmore v. United States, 411 U.S. 389, 396 (1973) (quoting Cheng Fan Kwok v. Immigration and Naturalization Service, 392 U.S. 206, 212 (1968))), and courts are to avoid expanding federal court jurisdiction by reading jurisdictional statutes broadly. Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 379 (1959), superseded by statute on other grounds as stated in Miles v. Apex Marine Corp., 498 U.S. 19 (1990). While Congress has the power to convert complaints purportedly based on state law into complaints stating federal claims from their inception, see Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987), legislative intent to do so must be reasonably clear and discernible. In other words, as noted in Digitel, the "nexus" between the federal statute, here the FTA, and claims traditionally viewed as sounding in state law must be "sufficient to bring [the federal statute] into play." 239 F.3d at 191. We do not think it necessary to determine today whether Digitel is an acceptable reading of the

15

FTA's grant of subject matter jurisdiction. Nor do we find it necessary to lay out the nature and character of the nexus needed to create federal jurisdiction, if nexus alone is indeed a satisfactory test. This is because we believe that the purported connection between the "555" issue and the Settlement Agreement is too tenuous in this case.[8]

Premiere's claims for breach of contract, fraudulent inducement, tortious interference with contract, and tortious interference with prospective contractual relations arise by virtue of mutual promises made by Premiere and SBC within the four corners of a contract-the Settlement Agreement[9]-or by virtue of SBC's

_____

[8]Applying Digitel's nexus theory broadly enough to include the state-law type claims asserted may run afoul of recent Supreme Court precedent regarding statutes that impact the state-federal balance. Where Congress aims to change the usual constitutional balance between the states and the federal government, it must make unmistakably clear its intention to do so in the statute's language. Will v. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989). This precept was recently echoed in Gonzales v. Oregon, 126 S. Ct. 904 (2006).

[9]The November 1999 Confidential Joint Settlement Agreement and Release is not part of the TPUC's order dismissing Premiere's complaint, or any court's dismissal order, so it is not akin to a consent decree encompassing an agreement that becomes in essence part of a judgment of a "hybrid nature." See Ruiz v. Estelle, 161 F.3d 814, 822 (5th Cir. 1998). The Settlement Agreement is purely a contract between Premiere and SBC arising under state law. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381-82 (1994) (stating that claim for breach of a settlement agreement that dismissed a federal lawsuit is a claim for breach of contract, over which there is no federal court jurisdiction, outside of ancillary jurisdiction when made part of court order).

16

purported conduct relating to this contract.  These claims sound in state, not federal, law, as the district court apparently recognized under its section 252(e)(6) analysis.

In any event, our conclusion is fully supported by Digitel. The earlier arguments before the FCC and the contract allegations set forth in the district court complaint "arise[] out of distinct disputes."  239 F.3d at 191.  Premiere's claims before the FCC, though they dealt with "555" number use, alleged *violations of specific provisions* of federal law, including the FTA, FCC rules, and SBC's tariff.  On the other hand, Premiere's claims under the Settlement Agreement, which were brought only in federal court, relate to a purported *breach of a promise* by SBC, in violation of state contract law, not to oppose Premiere's efforts to use a specific "555" number for one of its major clients.  That promise was made to Premiere by SBC in a separate contract designed to end litigation before the TPUC.  In Digitel, the claims found to be barred by section 207 were federal, not state, claims, brought pursuant to the Communications Act of 1934, appellee's tariff (filed under the Communications Act of 1934), and federal common law.  239 F.3d at 189.  Consistent with Digitel, we believe that since Premiere's contract-related claims are asserted under the language of the Settlement Agreement and not under the terms of the FTA, they are substantially unrelated to Premiere's previous claims

17

before the FCC.[10]   Thus, whatever the reach of section 207, there
is insufficient nexus between the two sets of claims to trigger the
section's election of remedies mandate.[11]

_____

[10]If and when <u>Digitel</u> is fully fleshed out in an appropriate
case, the elements of the "nexus" necessary for section 207
purposes may place at least some facially state-law related claims
within the reach of the FTA's federal subject matter jurisdiction.
State/federal relationships created by the FTA clearly exist.  <u>See,
e.g.</u>, 47 U.S.C. § 252(e) (providing for state commission
jurisdiction to approve interconnection agreements, and review of
state commission decisions by federal district court).

[11]We believe our conclusion that Premiere's claims under the
Settlement Agreement do not arise under federal law is undiminished
by a preemption argument.  Because preemption was not raised by
either party below, we mention it only to recognize a potential
issue.  Because we do not reach the merits of Premiere's claims
under the Settlement Agreement, but rather analyze only whether
they are susceptible to federal jurisdiction, we are guided by the
theory of complete preemption, as distinct from a general theory of
federal preemption as a defense.  <u>See</u> <u>Sullivan v. American
Airlines, Inc.</u>, 424 F.3d 267, 273, n.7 (2d Cir. 2005) ("'[I]n
complete preemption cases, federal law *so occupies the field* that
any complaint alleging facts that come within the statute's scope
necessarily 'arise under' federal law . . . .'") (quoting 15
Moore's Federal Practice § 103.45[2] (3d ed. 2005)) (alterations in
original); <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1313 (11th Cir. 2001)
("[O]rdinary preemption operates to dismiss state claims *on the
merits* . . . .") (quotations omitted) (emphasis added).  As such,
we express no opinion as to the validity of any defense based on
general federal preemption.

A number of cases have held that the FTA does not completely
preempt state-law causes of action.  <u>See, e.g.,</u> <u>Smith</u>, 236 F.3d at
1312-13 (reviewing the relationship between section 414 and section
207, and holding that Congress did not intend state-law claims
within the scope of the FTA to be federalized).  <u>See also</u> <u>Pinney v.
Nokia, Inc.</u>, 402 F.3d 430 (4th Cir. 2005) (holding there is no
evidence, given the FTA's "savings" clause, that Congress intended
the FTA to be the exclusive remedy for state-law claims, and thus
state claims in that case did not arise under federal law); <u>Marcus
v. AT&T Corp.</u>, 138 F.3d 46 (2d Cir. 1998) (same).  And because
Premiere's claims under the Settlement Agreement apparently do not
challenge SBC's tariff, the filed-rate doctrine likely does not

We further believe that the FTA's savings clause counsels recognition of these contract-based allegations as non-federal claims. "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414.[12] Section 207's election requirement and section 414's preservation of state-law claims requirement are harmonized in this case by noting that it is only claims brought *pursuant to the FTA* that are subject to section 207's election.[13]

In sum, the district court was correct in directing the federal claims to the FCC. The district court was also correct in

apply to completely preempt such claims and make them federal. See AT&T Co. v. Cent. Office Tel., Inc., 524 U.S. 214 (1998) (holding state contract and tort claims which seek services contrary to filed tariff are preempted by FTA under filed-rate doctrine); Cahnmann v. Sprint Corp., 133 F.3d 484 (7th Cir. 1998) (holding that where effect of contract action is to challenge tariff, the action arises under federal law).

[12]The savings clause merely preserves existing state-law remedies and does not require a restrictive reading of the FTA's grant of federal jurisdiction. Thus, proper court analysis of traditional state-law claims actually subsumed within the federal legislation, if any, will prohibit reformulated and duplicative state and federal litigation.

[13]Section 207 provides that a complaint about a common carrier may be brought to the Commission "as hereinafter provided for;" section 208 states that such complaint must be for "*contravention of the provisions [of the FTA]*." 47 U.S.C. § 208 (emphasis added). Section 207 also provides that suit may be filed in federal court against a common carrier for the recovery of damages "for which such common carrier may be liable *under the provisions of this chapter*." Id. at § 207 (emphasis added).

disclaiming jurisdiction over the state-law claims. With the federal claims properly dismissed and no diversity of citizenship apparent, the district court was well within its discretion to decline supplemental jurisdiction over Premiere's remaining issues. See Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). There was also no ancillary jurisdiction over the state-law claims because the Settlement Agreement did not arise out of a matter before the district court and was not part of any court order retaining federal control. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994).

## III. CONCLUSION

We affirm the district court's dismissal of Premiere's federal claims without prejudice. To the extent the district court concluded that Premiere's claims for breach of the Settlement Agreement, fraudulent inducement to enter into the Settlement Agreement, tortious interference with contract, and tortious interference with prospective contractual relations must be taken to the FCC, if anywhere, we reverse and remand for dismissal of the state-law claims without prejudice to their assertion in a court of competent jurisdiction.