15-3429 (L)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: June 6, 2016     Decided: September 23, 2016)

Docket Nos. 15-3429, 15-3529

———————————————————

CORY R. FOUNTAIN,
*Plaintiff-Appellant*,

v.

ANWAR M. KARIM,
*Defendant-Cross Claimant-Consolidated Plaintiff-Appellee*,

v.

UNITED STATES OF AMERICA, *Consolidated Cross Defendant-Appellee*, UNITED STATES DEPARTMENT OF AGRICULTURE, *Cross Defendant-Appellee*, TOM VILSACK, as Secretary of U.S. Department of Agriculture, *Consolidated Defendant*.[*]

———————————————————

Before:        SACK and LYNCH, *Circuit Judges*, and MURTHA, *District Judge*.[**]

A federal government employee borrowed a government-owned motor vehicle at the end of his workday without first obtaining explicit permission to do so. While driving it to the hotel in which he resided while on assignment to an office some distance from his home, he was involved in a traffic accident that

———————

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

[**] Hon. J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation.

seriously injured the plaintiff. The plaintiff then brought suit for damages against the employee and the government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, and New York law. The district court dismissed all claims against the government for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and declined to exercise supplemental jurisdiction over the remaining state-law claims against the employee, after finding that the employee was not acting within the scope of his employment at the time of the accident. We conclude that although such a finding would warrant dismissal in an action under the Act, dismissal was premature here in light of an unresolved factual dispute over whether the employee used the vehicle with implied permission. We therefore vacate and remand for further proceedings.

VACATED and REMANDED.

ROBERT BRUSCHINI, Martin, Harding & Mazzotti, LLP, Albany, NY, *for Plaintiff-Appellant*.

JAMES T. TOWNE, JR. (Susan F. Bartkowski & Christopher W. Rust, *on the briefs*), Towne, Ryan & Partners, P.C., Albany, NY, *for Defendant-Cross Claimant-Consolidated Plaintiff-Appellee*.

KAREN FOLSTER LESPERANCE, Assistant United States Attorney, of Counsel, *for*

Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, NY, *for Consolidated Cross Defendant-Appellee, Cross Defendant-Appellee, and Consolidated Defendant*.

SACK, *Circuit Judge*:

At all relevant times, Anwar M. Karim was a conservationist with the United States Department of Agriculture ("USDA"). One night in August 2010, he decided to drive a government vehicle from the office to which he had been temporarily assigned back to the local hotel at which he was staying and where he planned to park the vehicle overnight ahead of a business trip the following morning. He submitted a request for permission to his superior to do so, but left in the vehicle before he obtained a response. He apparently expected to receive retroactive approval of his request the following day. While en route to his hotel, though, his vehicle collided with that of the plaintiff, Cory R. Fountain, causing Fountain serious bodily injuries. Karim has admitted that his negligence caused the accident.

Fountain brought suit against Karim and his employer, the government, and the U.S. Secretary of Agriculture, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80; New York's permissive-use statute, N.Y. Veh. & Traf. Law § 388 ("VTL § 388"); and New York's common law

of negligence.  The district court dismissed all claims against the government for lack of subject matter jurisdiction, and declined to exercise supplemental jurisdiction over the remaining state-law claims against Karim, after finding that he was not acting within the scope of his employment at the time of the accident. We conclude that, although such a finding properly made would warrant dismissal in an FTCA action, dismissal in this case was premature in light of an unresolved factual dispute over whether Karim used the vehicle with his employer's implied permission.  Accordingly, we vacate the district court's decision and remand for an evidentiary hearing and further proceedings.

## BACKGROUND

Karim's permanent USDA duty station is in Rochester, New York, the city in which he lives with his family.  In August 2010, Karim was assigned to a temporary detail at the USDA office in Walton, New York.  Because Walton is about 175 miles and several hours away by car from Karim's home in Rochester,[1] the USDA provided Karim with housing at a Holiday Inn in nearby Oneonta,

---

[1]  Where not otherwise attributed, distances and geographic locations noted in this opinion were calculated using Google Maps, https://www.google.com/maps (last visited Sept. 7, 2016).  They are employed for the purpose of providing some geographic orientation for the reader.  We do not, of course, treat them as findings of fact.

New York.[2] His practice was to reside at the hotel from Monday through Friday, returning to Rochester for the weekend.

Karim's life while assigned to the Walton detail thus required a substantial amount of driving—between Rochester and Walton, between the Oneonta Holiday Inn and the Walton USDA office, and between the Walton USDA office and other USDA offices or locations in the field. While commuting between the Rochester and Walton areas and between the Holiday Inn and the Walton office, Karim was generally expected to drive—and usually did drive—his privately owned automobile. During working hours, however, the USDA gave Karim access to a government-owned 2009 Ford Explorer. This pattern of vehicle use followed the general policy and practice at the USDA at the time.

This is not to say, however, that Karim was forbidden from ever using the government-owned vehicle outside of normal working hours. Pursuant to an official USDA policy, he was permitted to take the vehicle home overnight so long as he first obtained his supervisor's signature on Form AD-728, which is titled "Request and Authorization For Home to Work Transportation." And in a departure from that policy, Karim's supervisor in Rochester, Bruce Hopkins, had

---

[2] Oneonta is some twenty-five miles north of Walton by road.

previously permitted him on several occasions to use a government-owned vehicle overnight without first obtaining a signature on Form AD-728. Karim claims that this happened at least five times over the course of two or three years; that he received retroactive written approval from Hopkins in each instance; and that he sometimes, but not always, obtained prior oral approval from Hopkins to borrow a vehicle. Hopkins, for his part, asserts that he would approve Karim's overnight use of the vehicle without a final signed Form AD-728 only if Karim obtained his prior oral approval. Three other USDA employees in positions similar to Karim's who were also supervised by Hopkins stated during internal USDA interviews that they knew they were supposed to obtain written authorization before using a government-owned vehicle, and that in no case could they or did they actually use a government-owned vehicle without first obtaining at least oral authorization. There is no evidence in the record, however, that Karim or any other USDA employee was ever denied a request to take a government-owned vehicle overnight.

Karim was scheduled to make a trip to the USDA field office in Highland, New York, which is about 100 miles to the southeast of Walton, on Wednesday, September 1, 2010. At the end of the workday on Tuesday, August 31, 2010, the

day before his scheduled trip, Karim decided to take the government-owned vehicle back to the Holiday Inn. At 5:57 p.m., he sent a Form AD-728, requesting permission to take the vehicle. His supervisor in the Walton office, Ashton Boozer, had not responded to the request by the time Karim left in the government-owned vehicle about three minutes later. Karim then collided (negligently, he conceded) with Fountain's vehicle while en route to the Holiday Inn. According to Karim, shortly after the accident, he called Boozer, who told Karim that he had received the Form AD-728 before he left the office but had not yet printed or signed it. Boozer denies that the phone call occurred.

And then came the paperwork. Following the accident, Boozer completed a Form SF-91 "Motor Vehicle Accident Report" on which he stated that Karim was not authorized to take the government-owned vehicle overnight, was not acting within the scope of his duties as an employee when the accident occurred, and would not have been given permission to take the government-owned vehicle because his request was "not advantageous" to the government. *See* Joint Appendix ("J.A.") 508-11. Karim, on the other hand, submitted Optional Form 26, "Data Bearing Upon Scope of Employment of Motor Vehicle Operator," on which he checked a box indicating that he had been given written permission to

take the government-owned vehicle, and wrote, "submitted request AD-728 prior to leaving office via email." J.A. 37, 512. Boozer signed this form and verified that the information contained in it was true and correct to the best of his knowledge and belief. *Id.* In later deposition testimony and in a written declaration, however, he stated that he had overlooked that the "written" box was checked in the authorization section, and that he had not intended to certify that Karim had authorization to take the government-owned vehicle overnight.

Fountain brought suit against Karim and the government in the United States District Court for the Northern District of New York, asserting claims under the FTCA and New York law, specifically VTL § 388 and the common law of negligence. Karim, in turn, asked the government to defend and indemnify him. Following an internal accident investigation, the government denied his request. Karim then cross-claimed in the lead case and filed a separate indemnification action against the government and Thomas Vilsack as Secretary of the USDA.[3] The district court consolidated the two actions for purposes of dispositive motion practice.

---

[3] The FTCA provides that upon certification by the Attorney General that an employee was acting within the scope of his office or employment when he committed the allegedly negligent act, the United States shall be substituted as the defendant in place

8

After completion of discovery, the government moved for summary judgment or dismissal of Fountain's complaint[4] on the ground that Karim was acting outside the scope of his employment at the time of the accident. Karim moved for a declaratory judgment ordering the United States to defend and indemnify him, and Fountain cross-moved for summary judgment in both actions.

The district court (Norman A. Mordue, *Judge*) concluded that Karim was not acting within the scope of his employment at the time of the accident on the ground that the USDA could not have exercised control over Karim because it had not granted him explicit permission to use the government-owned vehicle overnight. The court therefore dismissed all claims against the government and Secretary Vilsack in Fountain's tort action for lack of subject-matter jurisdiction

of the employee, and the FTCA shall be the exclusive remedy for any action or claim arising out of the negligent act. 28 U.S.C. § 2679(b)(1), (d)(1). If the Attorney General refuses to certify that the employee was acting within the scope of his employment, the employee may at any time before trial petition a federal district court for a certification that he was acting within the scope of his employment, 28 U.S.C. § 2679(d)(3), as Karim did in this case.

⁴ The government's notice of motion states that it sought a "[s]ummary [j]udgment [d]ismissing [c]omplaint," J.A. 640, and the government's memorandum of law in support of its motion states that it sought a "summary judgment, pursuant to Fed. R. Civ. P. 56, on the ground that Karim was acting outside the scope of employment at the time of the accident," 13-cv-255 N.D.N.Y. Dkt. No. 75-1 at 2.

under Federal Rule of Civil Procedure 12(b)(1).[5]  The court then dismissed Karim's indemnification action for lack of subject-matter jurisdiction,[6] denied Karim's motion for a declaratory judgment in both actions, denied Fountain's motion for partial summary judgment in both actions,[7] and declined to exercise supplemental jurisdiction over Fountain's state-law claims against Karim, dismissing them without prejudice.

Fountain and Karim now challenge the district court's dismissal on two grounds.  First, they contend that the court's finding regarding the scope of employment was premature because it overlooked a genuine dispute of material fact as to whether Karim used the vehicle with his employer's permission. Second, Fountain and Karim argue that the court erroneously treated as dispositive its finding that Karim operated the vehicle outside the scope of his

---

[5] Although the government moved for summary judgment dismissing the complaint in Karim's indemnification action, not Fountain's tort action, a district court can dismiss an action for lack of subject-matter jurisdiction under Rule 12(b)(1) *sua sponte*.  *See* Fed. R. Civ. P. 12(h)(3); *Digitel, Inc. v. MCI Worldcom, Inc.*, 239 F.3d 187, 190 (2d Cir. 2001).

[6] The district court also purported to dismiss the indemnification action "in its entirety on the merits."  Special Appendix ("S.A.") 22-23.  However, the district court had already dismissed the action "for lack of subject-matter jurisdiction," S.A. 22, which would seem to have precluded the district court from effecting a merits dismissal.

[7] Although Fountain filed a cross-motion for partial summary judgment in both actions, S.A. 3, the district court's opinion explicitly denied only the cross-motion in Fountain's tort action, *see* S.A. 23.  Nevertheless, the judgment states that Fountain's cross-motion was denied without differentiating between the two actions, S.A. 24, which makes clear that it was in fact denied in both actions.

employment. In their view, the government might nonetheless be held liable for Karim's negligent driving under the FTCA and VTL § 388.

## DISCUSSION

I. Standard of Review

On appeal from a judgment dismissing an FTCA suit for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we review the district court's factual findings for clear error and legal conclusions *de novo*. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

We review legal determinations in declaratory judgment actions *de novo*. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63-64 & n.5 (2d Cir. 2012). "We review a district court's decision to decline supplemental jurisdiction over pendent state law claims for abuse of discretion." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009).

II.  Analysis

It seems clear from the record in the district court that, on the date of the accident, no official or other person at the USDA gave Karim explicit permission—either in writing or orally—to borrow the government-owned Ford Explorer.  But the fact that Karim lacked explicit permission does not end the inquiry; if it did, the government could escape liability for its employees' torts by failing to complete necessary paperwork or by miscommunicating messages to its employees.  We must therefore inquire as to whether Karim had implied permission.

The material in the record does not establish as a matter of law whether Karim had such permission.  Supporting Karim's side of the argument, there is (1) the evidence of his past practice at the Rochester duty station of taking a government-owned vehicle overnight and receiving retroactive approval from

his supervisor there. Karim argues that he followed this practice on the night of the accident. And there is (2) the signature of Boozer, his Walton-office supervisor, on Karim's Optional Form 26, which could be interpreted as an endorsement of Karim's claim on that form that he had authorization to use the vehicle because he submitted a Form AD-728 prior to leaving the office.

Supporting the government's side of the argument, there is (1) the government's written policy requiring prior written approval before taking a government-owned vehicle overnight; (2) a statement by Hopkins, the Rochester-office supervisor, and statements from other USDA employees that, at a minimum, prior oral approval from a supervisor was required before a government-owned vehicle could be taken overnight; and (3) Boozer's Form SF-91, on which he wrote that Karim lacked authorization to take the government-owned vehicle overnight and would not have been given permission if Karim had asked ahead of time.

This dispute over the absence or presence of implicit permission bears directly on the scope-of-employment analysis. The FTCA waives the government's sovereign immunity in actions for money damages arising out of injury, loss of property, personal injury or death caused by the "negligent or

wrongful" act or omission of a government employee "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). We interpret the FTCA's "scope of employment" requirement in accordance with the *respondeat superior* law of the jurisdiction where the tort occurred, *see Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007)—here, New York. Under New York law, an employee acts within the scope of his employment when (1) "'the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities,'" and (2) "'[the employee] is doing something in furtherance of the duties he owes to his employer.'" *Id.* (quoting *Lundberg v. State*, 25 N.Y.2d 467, 470, 255 N.E.2d 177, 179, 306 N.Y.S.2d 947, 950 (1969)). Whether Karim had implied permission to take the government-owned vehicle on the night of the accident could influence the outcome of either or both prongs of the scope-of-employment test.[8]

---

[8] This is not to say that implied permission is by itself necessary or sufficient to support a finding that Karim acted within the scope of his employment when he drove to the Holiday Inn. Nonetheless, the district court must resolve this question because the presence or absence of implied permission is a significant factor in determining

*A.  Control*

First, the absence or presence of implied permission could shed light on whether Karim's employer exercised control over his use of the vehicle.  Without such permission, Karim would not have been acting within the scope of his employment at the time of the accident.  Under New York law, it is "clear" that, "as a general rule, an employee driving to and from work is not acting in the scope of his employment, because although such activity is work motivated, the element of control is lacking."  *Id.* (brackets and internal quotation marks omitted) (citing *Lundberg*, 25 N.Y.2d at 471, 255 N.E.2d at 179, 306 N.Y.S.2d at 950).

*Hamm* and *Lundberg* are the leading judicial authority for us in this regard. Each involved a government employee who caused an automobile accident while driving from his residence to a place of work, and in each case, the court concluded that the government employee in question was acting outside the scope of his employment at the time of the accident.  In *Hamm*, we explained that

---

whether Karim acted under government control and in furtherance of his duties to the government.

a military employee was acting outside the scope of his employment when he

caused a car accident because

> [t]he military [employer] did not require [the employee] to drive between these locations; he had voluntarily chosen to drive. Nor did the military instruct [the employee] on the route to take between [his home] and [the destination] or implicitly direct the route by providing him with a limited amount of time to make the journey.

*Id.* (internal quotation marks and citation omitted). The employee's drive to the destination was therefore "not based on the military's requirements or orders," but rather "done purely on his own time in order to commute to his place of employment." *Id.* Similarly, in *Lundberg*, the New York Court of Appeals held that a New York State employee was not acting within the scope of his employment when he caused an automobile accident while driving to a work site eighty miles from his home at the beginning of his work week: At the time of the accident, he was commuting to work and thus was "engaged in an independent personal activity over which the State had no control." 25 N.Y.2d at 471, 255 N.E.2d at 179, 306 N.Y.S.2d at 951.

In each case, though, there was no question but that the employee was driving his own car from his home to a designated workplace in a manner not controlled by his employer, and the case was decided on the essentially

16

undisputed lack of such control. Here, by contrast, the element of control is very much in dispute. To be sure, no evidence reflects that the time Karim spent driving from Walton to the Holiday Inn was considered to be on the clock or otherwise reimbursable; indeed, the evidence in the record is to the contrary inasmuch as Karim was neither paid nor reimbursed on a per mile basis for time spent commuting to work from his hotel and back. J.A. 164-65, 388, 839-41. But unlike the employees in *Hamm* and *Lundberg*, Karim was not driving his own vehicle at the time of the accident; he was driving one owned by the government. And it appears that the government imposes restrictions on employees who drive its vehicles. In the AD-728 form that Karim submitted to his supervisor Boozer prior to driving the government-owned vehicle on the night of the accident, for example, Karim certified:

> I will not use this vehicle at any time for my personal convenience or permit others to do so. When parked at or near residence, vehicle will be kept locked and every precaution taken to guard it against damage or theft, etc. I understand that use of this vehicle for other than official purposes makes me subject to suspension without pay for a period of not less than one month or to removal summarily from office . . . .

17

J.A. 394. If Karim operated the vehicle with implied permission, he may have done so subject to those or similar restrictions, which could in turn demonstrate a measure of control by his employer.

Moreover, unlike the employees in *Hamm* and *Lundberg*, who were each simply driving from his home to his place of work, Karim was at least in one sense driving from one place of work (the Walton office) to another (the Highland office), with a stop in between (the Oneonta Holiday Inn). That Karim was at least arguably driving from one place of work to another could add support to a contention that the drive was controlled to a significant extent by his employer, the government. Indeed, in *Lundberg*, the New York Court of Appeals recognized an exception to the general rule that an employee is considered to be outside the scope of employment while commuting:

> [A]n employee who uses his car in furtherance of his work is acting in the scope of his employment while driving home from his last business appointment, since such a person is working, and is under his employer's control, from the time he leaves the house in the morning until he returns at night.

25 N.Y.2d at 471, 255 N.E.2d at 179, 306 N.Y.S.2d at 950 (citations omitted). This exception was applied in the pre-*Lundberg* case of a traveling insurance salesman and premium collector who caused a vehicle accident while traveling to his

company's office for a meeting at the end of his workday, *Cooke v. Drigant*, 289 N.Y. 313, 317, 45 N.E.2d 815, 817 (1942), and in the pre-*Lundberg* case of a motor repairman who was returning home in his own vehicle following a day of repair appointments but was still on call at the time he caused the accident in question, *see Shauntz v. Schwegler Bros.*, 259 A.D. 446, 447-50, 20 N.Y.S.2d 198, 198-201 (4th Dep't 1940) (collecting cases).  Karim used a vehicle in furtherance of his work in order to, among other things, visit other USDA offices and to make field visits.  If Karim had implied permission to use the government-owned vehicle for the purpose of facilitating his trip to the Highland office, then like the employees in *Cooke* and *Shauntz*, his trip from the Walton office to his hotel could be said to be work-related, and not solely a personal commute.

In order to decide whether Karim's employer exerted control over his use of the vehicle, the district court thus must first resolve the factual dispute concerning the implied permission issue.

*B.  In Furtherance of Duties Owed*

If the "control" issue were decided against the government, the district court would then be required to address the second prong of the scope-of-employment test under New York law: whether Karim was acting "in

furtherance of" the duties he owed to the government, as his employer, at the time of the accident. That question cannot be resolved on the facts in the record before us. Accordingly, the district court should not have dismissed these actions for lack of subject-matter jurisdiction under Rule 12(b)(1) without first holding an evidentiary hearing.

Karim and Fountain both argue (it being in the interest of both, of course, that the government bear the liability for Fountain's injuries) that Karim's taking of the government-owned vehicle on the date of the accident was in furtherance of his duties to the USDA because he was scheduled to travel to the Highland USDA office the following morning, and he drove the vehicle to the hotel to facilitate that trip. In response, the government argues that Karim drove the vehicle back to the hotel not for any business reason, but in order to take a milder, less steep, and less winding route to the Highland office the next day. According to the government, Karim's use of the government-owned vehicle was purely for his personal convenience, and could not have been advantageous to the government, because it "would have resulted in the [government-owned vehicle] being stored offsite unnecessarily . . . and driven 97.2 miles more than if Karim had simply picked [the vehicle] up at the Walton office on his way to

Highland that morning." Appellee's Br. 21. Thus, in the government's view, the issue boils down to a simple question of geography: Was Karim's planned route shorter and therefore less costly than the route he would have taken if he had to pick up the government-owned vehicle the following morning?[9]

But the question whether Karim was acting "in furtherance of the duties he owes to his employer" is more fact-intensive than the government suggests. The New York Court of Appeals has explained that "among the factors to be weighed are":

> the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

*Riviello v. Waldron*, 47 N.Y.2d 297, 303, 391 N.E.2d 1278, 418 N.Y.S.2d 300 (1979) (citation omitted). The question whether an employee was acting "in furtherance of" the employer's interests may therefore turn on any number of factors, not a

---

[9] Our perusal of a map of the area suggests that a direct route between Oneonta, in or near where Karim's hotel was located, and the USDA office in Highland, where Karim had his first appointment on the following day, did not pass through Walton and that a stop in Walton to change vehicles would therefore have added unnecessary time to Karim's trip. Whether that is so (and if so, whether that matters) is of course something to be decided by the district court in the first instance.

single consideration such as geography or fuel savings. And we can see several potential bases for a conclusion that, by taking the government-owned vehicle overnight, Karim was acting in furtherance of his duties to the USDA. For instance, taking the vehicle may have allowed Karim to maximize his time at the Highland office the following day.[10] Or, Karim's route may have in fact been safer and posed less of a risk of an accident involving the vehicle. Thus, on the facts of this case, if Karim had implied permission to take the government-owned vehicle on the date of the accident, this might in turn imply that his taking of the vehicle was to the USDA's benefit, and thus in furtherance of his duties to the USDA.

Thus, if Karim's fateful drive is found as a matter of fact to have fulfilled the first prong of the scope of employment test—the government was or could have been "exercising some control, directly or indirectly, over [Karim's] activities," *Hamm*, 483 F.3d at 138 (quoting *Lundberg*, 25 N.Y.2d at 470, 255 N.E.2d at 179, 306 N.Y.S.2d at 950)—then there is a reasonable possibility that he could

---

[10] This accords with one of the grounds for home-to-work transportation listed on Form AD-728: "Compelling operation considerations make the provision of home-to-work transportation essential to the conduct of official business or would substantially increase the agency's efficiency or economy." *See* J.A. 394. Indeed, the Form AD-728 that Karim submitted reflects that Karim checked a box indicating that this ground was a proposed basis for receiving official permission to take the vehicle overnight. *See id*.

also succeed on the second prong by demonstrating that he was "doing something in furtherance of the duties he owe[d] to his employer," *id.* We do not see how the district court, on the record before it, could have conclusively decided whether either of these prongs was or was not satisfied so as to justify dismissing this action as it did.

In sum, we conclude that in light of the genuine dispute among the parties, the district court should not have dismissed these cases for lack of subject-matter jurisdiction without first conducting an evidentiary hearing on whether Karim had implied permission to take the government-owned vehicle. We therefore vacate the district court's decision as to Fountain's FTCA claim and Karim's declaratory-judgment action against the government. Having revived the federal claims, at least for now, we also reinstate Fountain's state-law claims, as to which the district court declined to exercise supplemental jurisdiction because all federal claims had been dismissed. *See Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015); *Velez v. Levy*, 401 F.3d 75, 102 (2d Cir. 2005). At a later stage of the proceedings, it may, of course, become appropriate for the district court to determine that there are sufficient grounds to decline to exercise supplemental jurisdiction over the reinstated state-law claims.

Having concluded that the district court's decision must be vacated in its entirety, we leave it to the district court to address in the first instance Fountain's and Karim's arguments concerning VTL § 388, which it did not address in its prior decision.

## CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment dismissing this action for lack of subject-matter jurisdiction, reinstate all claims, and REMAND for further proceedings.