18-2607
*Oneida Indian Nation v. United States Department of the Interior*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of October, two thousand nineteen.

PRESENT:
> DENNIS JACOBS,
> ROBERT D. SACK,
> PETER W. HALL,
> > *Circuit Judges.*

-----------------------------------------------------------------------

ONEIDA INDIAN NATION,

> *Plaintiff-Appellant,*

> v. 18-2607

UNITED STATES DEPARTMENT OF THE
INTERIOR,

> *Defendant-Appellee.*

1

------------------------------------------------------------------------

FOR APPELLANT: MICHAEL R. SMITH, Zuckerman Spaeder LLP, Washington, D.C. (David A. Reiser, Zuckerman Spaeder LLP, Washington, D.C., Thomas L. Sansonetti, Holland & Hart LLP, Washington, D.C., *on the brief*).

FOR APPELLEE: REUBEN S. SCHIFMAN, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C. (Jeffrey Bossert Clark, Eric Grant, J. David Gunter II, Environment and Natural Resources Division, U.S. Department of Justice, Washington, D.C., Grant C. Jaquith, Karen Folster Lesperance, United States Attorney's Office for the Northern District of New York, Albany, NY *on the brief*).

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment of the District Court is **AFFIRMED**.

Appellant appeals from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) entered on August 24, 2018 granting the motion by the Department of Interior ("DOI") to dismiss the

2

Complaint pursuant to Fed. R. Civ. P. 12(b)(1). We assume the parties' familiarity

with the facts, record of prior proceedings, and arguments on appeal, which we

reference only as necessary to explain our decision to affirm.

**I.**

The following undisputed facts are drawn from the Complaint. *See State*

*Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

In 2010, a tribe, then known as the "Oneida Tribe of Indians of Wisconsin"

(the "Wisconsin Oneidas") passed a resolution requesting that DOI conduct a

Secretarial election to amend the tribe's constitution by, among other things,

changing the tribe's name to "Oneida Nation."[1] In 2011, DOI's Midwest Regional

---

[1] The Indian Reorganization Act provides that an "Indian tribe . . . may adopt an appropriate constitution and . . . any amendments thereto." 25 U.S.C. § 5123(a). To "become effective," a tribe's constitutional amendment must "(1) [be] ratified by a majority vote of the adult members of the tribe . . . at a special election authorized and called by the Secretary [of the DOI] under such rules and regulations as the Secretary may prescribe; and (2) [be] approved by the Secretary pursuant to [U.S.C. § 5123(d)]." *Id.* Section 5123(d), in turn, provides that if the special election conducted pursuant to 25 U.S.C. § 5123(a)(1) "results in the adoption by the tribe of the proposed . . . [constitutional] amendment[] . . . the Secretary shall approve . . . [the] amendment[] . . . within forty-five days after the election unless the Secretary finds that the . . . amendment[] [is] contrary to applicable laws." 25 U.S.C. § 5123(d). Amendments are no longer required if a tribe has amended its constitution accordingly. *See* 80 Fed. Reg. 63094 (Oct. 19, 2015) (recent amendments to regulations, effective November 18, 2015, permitting tribes to amend constitutions to remove requirement that DOI approve subsequent amendments). The Wisconsin Oneidas have apparently amended their constitution to remove approval requirements by DOI in their constitution for future constitutional amendments.

Office notified the Wisconsin Oneidas by letter that the Secretarial election could proceed because "[n]one of the proposed amendments appear[s] to be contrary to federal law," but DOI did note that the Wisconsin Oneidas should consider the potential that the name change may cause confusion with Appellant (the "New York Oneidas"), who then called itself "Oneida Nation of New York." J App. at 26, 47-51. The Wisconsin Oneidas voted to adopt the proposed name change and received approval from DOI in June 2015. The Federally Recognized Indian Tribe List Act of 1994 requires DOI to publish a list of federally recognized tribes in the Federal Register. In 2016, the revised list referred to the Wisconsin Oneidas as "Oneida Nation."

The Wisconsin Oneidas thereafter petitioned the Trademark Trial and Appeal Board of the United States Patent and Trademark Office ("TTAB") to cancel Appellant's registration of the marks "Oneida" and "Oneida Indian Nation," touting the Wisconsin Oneidas' "federally recognized name—Oneida Nation" in arguing that Appellant should not be allowed to limit the Wisconsin Oneidas use of that name. *Id*. at 63.

In August 2017, Appellant brought this action against DOI, asserting claims under the Administrative Procedure Act. As relevant to this appeal, Appellant

4

asserts that it was injured by DOI's approval of the Wisconsin Oneidas' name change and its listing of the Wisconsin Oneidas as "Oneida Nation" as a federally recognized tribal entity in the Federal Register. Appellant asked the court to "[d]eclar[e] to be unlawful and set[] aside" the DOI's approval of the Wisconsin Oneidas' name-change amendment and decision to list Wisconsin Oneidas as "Oneida Nation" and to enjoin DOI from approving "Oneida Nation" as the name of the Wisconsin Oneidas. J. App. 44. The District Court granted the motion to dismiss for lack of subject matter jurisdiction because it determined that Appellant lacked standing.

## II.

"We review *de novo* a district court's dismissal of a complaint for lack of standing." *Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009).

## III.

As a preliminary matter, Appellant contends that the District Court erroneously failed to accept as true certain "plausible, corroborated, and uncontradicted allegations of injury" in the Complaint, to wit: "the allegations that [Appellant] would be harmed by the probable confusion of federal agencies, the public and others, by the [Wisconsin Oneidas'] actual claim to superior rights to

5

. . . the name Oneida Nation, and the claimed cultural and political diminishment of the [New York Oneidas]." Appellant Br. 24–25. That argument is misguided. While we accept as true undisputed *factual* allegations in a complaint, we "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). Whether an alleged injury supports standing is a question of law, and in order to decide that question a court must assess whether (1) "the plaintiff [has] suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical;" (2) there is "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and alterations omitted). In making that assessment, the District Court was not required to accept as true the conclusory allegation that Appellant would be harmed by DOI's approval and publication of the Wisconsin Oneidas' chosen

6

name.[2]

Appellant principally argues that it has standing based on three categories of injury: (A) harms related to the TTAB proceeding; (B) actual and potential confusion; and (C) reputational and dignity harm. We address these alleged harms in turn.

## A. TTAB Proceeding

Appellant argues that the TTAB proceeding constitutes a cognizable injury because DOI's approval of the name change "might be understood to give the Wisconsin tribe at least an equal right to use a similar name," thereby prejudicing Appellant in the proceeding, Appellant Br. at 57, and because the TTAB proceeding "require[s] [Appellant] to retain and pay counsel, a concrete and direct monetary injury," *id*. at 32.[3] Even if the litigation costs and potential prejudice in the TTAB proceeding are deemed cognizable injuries, and even if those injuries

---

[2] As plaintiff points out, the district court appears to have incorrectly suggested that all 12(b)(1) motions present fact-based challenges to a complaint. However, if that is error, we see no impact of it on the District Court's reasoning or ours.

[3] Appellant also asserts that it meets the injury in fact requirement based on the Wisconsin Oneidas' cease-and-desist demand and threats to sue. Regardless of whether the Wisconsin Oneidas' cease-and-desist demand and threat to sue were cognizable injuries, those injuries are not redressable by the relief sought in this action. *See* J. App. 31 (seeking declaratory and injunctive relief).

are fairly traceable to DOI's recognition of the Wisconsin Oneidas' new name, the TTAB proceeding fails as a basis for standing because those injuries are not redressable by a favorable decision in this case.

Although the Wisconsin Oneidas' amended TTAB petition touts DOI's federal recognition to lend credibility to the Wisconsin Oneidas' claim of superior rights to the marks, *see, e.g.*, J. App. 100, 139, 145, the asserted grounds for cancellation of the marks "Oneida" and "Oneida Indian Nation" are independent of the name change. The amended petition asserts the following grounds for cancellation: fraud in the procurement of the registrations on the basis that Appellant had no bona fide intent to use to the marks in commerce; fraud in the renewals of or statements about the registration on the basis Appellant was not actually using the marks on all of the goods and services that it listed; fraud based on Appellant's awareness of the Wisconsin Oneidas' rights to use the marks; abandonment of registrations; and the potential for confusion between (i) Appellant's "Oneida" mark and (ii) the Wisconsin Oneidas' use of that name, which preexisted Appellant's 2006 registration application.

Because the Wisconsin Oneidas' prior name also included "Oneida," and the Wisconsin Oneidas asserts that it used the "Oneida" mark in commerce well

8

before its DOI-sanctioned name change, any argument in the TTAB proceeding as to confusion is not dependent on the name change. Oneida Indians have long been separated into two groups: a group that has remained in upstate New York and a group that split long ago from the New York Oneidas and moved to Wisconsin. The group of New York Oneidas, the plaintiff here, claims primacy to the name "Oneida Nation," and claims exclusive status as the descendants of the original Oneida Indians. The Wisconsin Oneidas contest these claims. A declaratory judgment invalidating DOI's recognition of the Wisconsin Oneida's name change is therefore not likely to end the TTAB proceeding or materially strengthen Appellant's position in it. Appellant thus fails to show that it is "likely, as opposed to merely speculative," that any injury relating to the TTAB proceeding would be redressed by a favorable decision. *Lujan*, 504 U.S. at 561.

Appellant argues that the TTAB's decision to stay the cancellation proceeding reflects the TTAB's judgment that the trademark proceeding is redressable by a favorable decision in this case, and that we should defer to the TTAB as the experts on trademark law. That argument fails because even if we agree that it would be appropriate to defer to such a determination by the TTAB, the TTAB has made no such determination. The TTAB suspended the proceeding

9

because "[i]t is the policy of [TTAB] to suspend proceedings when the parties are involved in a civil action, which may be dispositive of or have a bearing on the Board case." J. App. 162. The TTAB's decision to stay the cancellation proceeding in accordance with its internal policy does not mean that the outcome of this case necessarily will or is likely to affect the cancellation proceeding.

## B. Confusion

Appellant also contends that the likelihood of confusion between the tribes' names, both by government officials and the public, is a sufficient injury to confer standing. Not every allegation of confusion, even if plausible, amounts to a concrete harm.

The New York Oneidas' allegations are conjectural. The bulk of their allegations simply recite "injury" or "harm" resulting from confusion, without specifying what the injury or harm actually is. During briefing to the District Court, Appellant provided two examples of "confusion" that could give rise to injury – a request for a Corrective Action Plan from the Department of Health and Human Services that was intended for the Wisconsin Oneidas but was sent to the New York Oneidas in error and an invoice that was addressed to the Wisconsin Oneidas but inadvertently emailed to the New York Oneidas. Appellant does not

10

explain how the confusion resulting in the request for a Corrective Action Plan could give rise to a concrete injury and the theory of harm that could result from the mistaken invoice—"the risk for reputational and financial injury"—is hypothetical at best. And Appellant's allegation that confusion results in an injury because of Appellant's need "to pay consultants and lawyers to attempt to limit [] confusion," J. App. 38, still does not explain what harm could be caused by that confusion that requires limiting in the first instance. Incurring costs in anticipation of potential future harm that is not concrete or imminent is insufficient to create an injury that will confer standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

Even assuming this federally recognized name change caused confusion with a concrete commercial effect sufficient to support an injury, the record does not demonstrate that such commercial confusion is fairly traceable to DOI's action. The Wisconsin Oneidas have been referring to themselves as the "Oneida Nation" in their relationships with the public and on internal government documents for decades. There is no evidence in the record that any confusion between the two

11

tribes has increased as a result of DOI's name change approval, or that parties with whom the tribes deal rely on the Federal Register's listing for identification of various tribes. The supposed harm caused by confusion is similarly not redressable by a favorable decision in this case. There is no indication that the Wisconsin Oneidas will cease using the name "Oneida Nation" in their dealings with the public and the government if DOI's actions are set aside. The Wisconsin Oneidas are also now permitted to amend their constitution without DOI's approval. Thus, were DOI's decision vacated, the Wisconsin Oneidas may simply amend their constitution to change their name to "Oneida Nation."

Appellant does not plead any injury which, even if concrete, is fairly traceable to DOI's action or redressable by vacating the same. The District Court properly found that the "confusion" pled by Appellant cannot support standing.

## C. Reputational and Dignity Harm

Appellant argues that DOI's name change "vindicated the Wisconsin tribe's erroneous claim to the Oneida Nation legacy" and thereby "diminished the [New York Oneidas'] status and reputation as the original Oneida Nation, or its direct successor." Appellant Br. 38–39.[4] To support its reputational injury argument,

_____

[4] The District Court did not address this argument because it understood Appellant to be asserting only two injuries in fact: the TTAP proceeding and confusion. The Complaint

12

Appellant cites cases in which a plaintiff successfully asserted reputational injury based on a derogative or negatively perceived label applied to the plaintiff by the government. Appellant Br. 41–42 (citing, *inter alia*, *Meese v. Keene*, 481 U.S. 465, 473–77 (1987) (state senator seeking to exhibit films had standing to challenge the Department of Justice's characterization of films as "political propaganda"); *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 139–40 (1951) (certain nonprofit organizations designated as "Communist," injuring their right to be free from defamatory statements); *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 711–12 (6th Cir. 2015) (group labeled "hybrid gang" in a government report entitled "National Gang Threat Assessment")).

Those cases are distinguishable. In each of them, the government attached a derogatory label to the plaintiff, whereas here the government has said nothing about the New York Oneidas, let alone anything derogatory. *See Meese*, 481 U.S. at 469–70 (the Department of Justice applied label "political propaganda" to films pursuant to statutory definition); *McGrath*, 341 U.S. at 125 (government entities purported to act pursuant to Presidential authorization to designate organizations

does, however, assert injury to Appellant's reputation or dignity, albeit not in a highly developed way. *See* J. App. 38 (Compl. ¶ 65) (asserting injury "by reason of the cultural and political diminishment of [Appellant]"); *id*. at 43 (Compl. ¶ 78); *id*. at 44 (Compl. ¶ 80).

as Communist "after appropriate investigation and determination"); *Parsons*, 801 F.3d at 707 (government agency described group as "hybrid gang" in threat assessment report).

In any event, that DOI published the new name does not imply that the federal government regards Appellant as lesser. As Appellant admits, DOI's policy is to approve automatically any name chosen by a tribe. By contrast, *Meese*, *McGrath*, and *Parsons* involved negative labels applied by the Government based on certain statutory criteria or the Government's own analysis.

At bottom, reputational harm arises from the perception of outsiders, but here there is no allegation that anyone now views the New York Oneidas as somehow inferior in light of DOI's actions.

## IV.

We have considered all of the Appellant's remaining arguments and have found them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court