19-227-cv
*Razmzan v. United States*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2019
No. 19-227

**AISHA AGYIN,**
*Plaintiff,*

v.

**SHAHRAM RAZMZAN,**
*Defendant-Appellant,*

**UNITED STATES OF AMERICA,**
*Appellee.*\*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: FEBRUARY 4, 2020
DECIDED: JANUARY 26, 2021

Before:     POOLER, LYNCH, and MENASHI, *Circuit Judges*.

---

\* The Clerk of Court is directed to amend the caption as set forth above.

After he was sued for medical malpractice in state court, Dr. Shahram Razmzan removed the case to federal court and moved to substitute the United States as the defendant in his place. Razmzan argued that the alleged malpractice occurred within the scope of his employment at a federally deemed community health center, entitling him to immunity and the substitution of the United States as the defendant under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n).

The U.S. District Court for the Southern District of New York (Karas, J.) disagreed in part. It concluded that some of the alleged malpractice occurred outside the scope of Razmzan's employment because he had billed for some of his services privately, in contravention of the Federal Tort Claims Act Health Center Policy Manual (the "FTCA Manual"), and that he was therefore not covered by the FSHCAA implementing regulation, 42 C.F.R. § 6.6. The district court denied substitution of the United States as to that conduct and remanded the case in part to state court. Razmzan appealed.

The government argues that we lack jurisdiction to entertain this appeal because Razmzan appealed from an unreviewable remand order. Pursuant to 28 U.S.C. § 1447(d), remand orders are unreviewable except in cases that were originally removed under 28 U.S.C. § 1442 or § 1443. Because Razmzan removed this case under § 1442, we are not barred from reviewing the district court's remand order. As to the merits of the appeal, we conclude that Razmzan was acting within the scope of his employment under the relevant law—New York law—for the acts for which he billed privately. The FTCA Manual is not entitled to deference to the extent that it provides otherwise. Accordingly, we **REVERSE** the district court's order in

2

part and **REMAND** for further proceedings consistent with this opinion.

---

MATTHEW S. FREEDUS, Feldesman Tucker Leifer Fidell LLP, Washington, DC (Jonay F. Holkins and David A. Bender, *on the brief*), *for Defendant-Appellant*.

BENJAMIN H. TORRANCE, Assistant United States Attorney (Jennifer C. Simon, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

---

MENASHI, *Circuit Judge*:

In 2016, Aisha Agyin sued Dr. Shahram Razmzan in state court for medical malpractice related to his delivery of her stillborn child. At the time of the alleged malpractice, Razmzan was an employee of Hudson River Health Care, Inc. ("HRHCare"), a "deemed" community health center pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n). Under the FSHCAA, federally deemed community health centers and their employees are immune from malpractice suits for acts or omissions that occur within the scope of their employment. Based on this immunity, Razmzan removed the action to the U.S. District Court for the Southern District of New York and filed a motion to substitute the United States as the defendant.

After the case was removed, the government argued that Razmzan was not entitled to immunity and substitution because he

3

acted outside the scope of his employment when he billed for his services privately, in contravention of the Federal Tort Claims Act Health Center Policy Manual (the "FTCA Manual"), removing him from coverage under 42 C.F.R. § 6.6. The district court (Karas, J.) agreed with the government in part, denied substitution of the United States with respect to the conduct for which Razmzan billed privately, and remanded part of the case to state court. Razmzan appealed.

Under 28 U.S.C. § 1447(d), we lack jurisdiction to review a remand order unless the case was removed under 28 U.S.C. § 1442 or § 1443. The government argues that we lack jurisdiction because Razmzan did not remove this case under either section. We disagree. Razmzan invoked 28 U.S.C. § 1442(a)(1) in his notice of removal and adequately pleaded the required elements, giving us appellate jurisdiction over the question of whether removal was proper. Because, on reviewing that question, we conclude that removal was proper, we have jurisdiction to review the underlying merits of the district court's remand order.

As to the merits, we conclude that Razmzan acted within the scope of his employment when performing the services for which he billed privately. Under 42 U.S.C. § 233, Razmzan's scope of employment is determined by the "law of the place"—here, the law of the State of New York. Under New York law, Razmzan acted within the scope of his employment for these services because he acted in furtherance of his employment contract with HRHCare and to benefit HRHCare. To the extent the FTCA Manual provides otherwise, it is not entitled to deference. Because we conclude that Razmzan acted within the scope of his employment for the services for which he billed privately, we reverse the district court's order in part and remand for further proceedings consistent with this opinion.

4

## BACKGROUND

Razmzan is an experienced obstetrician and gynecologist who served as a part-time employee for HRHCare. During the relevant period, HRHCare was a federally deemed community health center, receiving federal grant funds under Section 330 of the Public Health Service Act, 42 U.S.C. § 254b. In 2010, HRHCare hired Razmzan to serve as the medical director of its Park Care site in Yonkers, New York. Razmzan's employment contract stated that his "responsibilities … include[d] the care of HRHCare's hospitalized and outpatient Ob-Gyn patients in [HRHCare's] Yonkers, NY offices" and that he would "manage HRHCare's patients when they require hospitalization." Supp. App'x 30. As compensation for his services, Razmzan was to receive an annual salary of $165,000 but, in addition, was "responsible for"—and entitled to—"all hospital billing and collections" for services he provided at hospitals. *Id*. at 31.

In his notice of removal, Razmzan alleged that his employment agreement with HRHCare was designed to "compensate him directly through a salary with respect to his outpatient services to HRHCare patients and indirectly by allowing him to bill and collect payment for the inpatient services he rendered to HRHCare patients … at the hospital." *Id*. at 9. According to Razmzan, "[t]his arrangement was designed to benefit HRHCare" because HRHCare "could not afford to pay Dr. Razmzan, given his level and years of experience, on a salaried basis for his outpatient *and* inpatient services," so "[b]y designing an agreement that effectively assigned the revenue HRHCare would have otherwise received to Dr. Razmzan for inpatient services to its patients, HRHCare benefited by securing a highly experienced OBGYN to serve its patients without having to commit itself to a fixed salary that would adequately compensate

5

Dr. Razmzan." *Id*. at 9-10. The district court accepted this account of the contract. App'x 66-67.

The FSHCAA authorizes the Secretary of the Department of Health and Human Services to deem certain health centers that receive federal funds, and their employees, to be employees of the Public Health Service ("PHS") for the purposes of 42 U.S.C. § 233. Under § 233(a), PHS employees are entitled to the protections of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), including "absolute immunity … for actions arising out of the performance of medical or related functions within the scope of their employment." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). To obtain deemed federal status, HRHCare was required to submit an application on behalf of itself and its employees each year. And each year during the relevant period, HRHCare submitted deeming applications on behalf of itself and its employees, including Razmzan. Those deeming applications were granted, and "[o]nce the Secretary makes a determination that an entity … is deemed to be an employee of the Public Health Service for purposes of [§ 233], the determination [is] … final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." 42 U.S.C. § 233(g)(1)(F).

When a deemed employee is sued "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions … the Attorney General, within 15 days after being notified of such filing, shall make an appearance … and advise … as to whether the Secretary has determined" that the employee is "deemed to be an employee of the Public Health Service … with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* § 233(a), (*l*)(1). If the Attorney General does so, the civil action or proceeding "shall be removed without

6

bond at any time before trial … to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States." *Id*. § 233(c). "If the Attorney General fails to appear in State court within the time period prescribed … upon petition of" the employee, "the civil action or proceeding shall be removed to the appropriate United States district court." *Id*. § 233(*l*)(2).

Agyin was a patient of HRHCare who received prenatal care from HRHCare throughout her pregnancy with twins. When Agyin was thirty-seven weeks pregnant, she saw Razmzan for a prenatal visit at an HRHCare clinic. Concerned about the risks of Agyin's pregnancy, Razmzan recommended that Agyin deliver the next day and scheduled a delivery at St. John's Riverside Hospital. Razmzan performed the delivery of Agyin's twins at the hospital, and one of the twins was stillborn. After Agyin was discharged from the hospital, Razmzan met with her at least two more times at the HRHCare clinic. In accordance with his employment contract, Razmzan billed and received payment privately for the delivery of Agyin's twins. He did not bill privately for the outpatient services he provided to Agyin at the HRHCare clinic.

Agyin sued Razmzan for medical malpractice in New York state court. Razmzan removed the case to the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1442(a)(1) and 42 U.S.C. § 233(*l*)(2), and he moved for substitution of the United States as the defendant in his place. The district court heard argument on Razmzan's motion and concluded that Razmzan acted outside the scope of his employment when he delivered Agyin's children because he billed and received compensation for the delivery privately. In its ruling, the district court deferred to the FTCA Manual, a Department

7

of Health and Human Services (HHS) policy document which provides that "FTCA coverage will apply to the provider … as long as … [t]he funds received by the provider … are transferred directly to the health center."[1] Razmzan moved for reconsideration, and after hearing argument, the district court denied his motion. Razmzan then appealed.

## DISCUSSION

The government argues that we lack jurisdiction to hear this appeal under 28 U.S.C. § 1447(d) because Razmzan did not remove the case under 28 U.S.C. § 1442 or § 1443. Razmzan argues that he removed the case under § 1442 and that we therefore have jurisdiction to hear his appeal. Razmzan further argues that the district court erred when it concluded that he acted outside the scope of his employment for the services for which he billed privately. We review an appeal from an order of remand *de novo*. *See Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 310 (2d Cir. 2005). We also review scope-of-employment determinations *de novo*. *McHugh v. Univ. of Vt.*, 966 F.2d 67, 72 (2d Cir. 1992).

## I

We begin with the question of our jurisdiction to hear this appeal. The exercise of appellate jurisdiction here is proper because Razmzan's notice of removal asserted a colorable claim for removal under § 1442. That alone is sufficient for us to exercise appellate jurisdiction over the question of § 1442 removal, even if we were

---

[1] Health Res. & Servs. Admin., U.S. Dep't of Health & Hum. Servs., Federal Tort Claims Act Health Center Policy Manual at 13 (July 21, 2014), *available at* https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf (last visited Jan. 19, 2021).

8

ultimately to conclude that the removal itself was improper. *See, e.g.*, *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 586 F. App'x 604, 606 (2d Cir. 2014) (noting that only a "bare or frivolous invocation" of § 1442 "would require us to dismiss the appeal for lack of appellate jurisdiction").

Furthermore, we conclude that removal under § 1442 was proper here because Razmzan was acting under a federal officer when he treated Agyin at the hospital and the other requirements of § 1442 are met. We reject the government's contentions that Razmzan's removal was procedurally defective because it was untimely or inadequately pleaded. We address each of these issues in turn.

**A**

Section 1442 authorizes "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof" to remove actions "for or relating to any act under color of such office."[2] Under § 1442, "federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989).

As this court has explained, "To invoke the statute, a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable

---

[2] *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015) (noting that Congress's addition of "the 'or relating to' language [was] 'intended to broaden the universe of acts that enable Federal officers to remove to Federal court'") (quoting H.R. Rep. No. 112-17, pt. 1, at 6 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 420, 425).

federal defense.'" *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008)); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).

Razmzan is a "person," *see* 1 U.S.C. § 1, and he has raised a colorable federal defense. In the district court, Razmzan prevailed in raising a federal defense with respect to his conduct at the clinic. App'x 71. That defense alone suffices for removal under § 1442 because he raised it at the time of filing his notice of removal. *See Pantalone v. Aurora Pump Co.*, 576 F. Supp. 2d 325, 329 (D. Conn. 2008) ("The propriety of removal under the statute should be considered at the time of removal."). Neither the district court nor the government now disputes that Razmzan raised a colorable federal defense as to his conduct at the clinic at the time of removal. The only open question therefore is whether Razmzan "acted 'under color of federal office'"—that is, whether he was "acting under" a federal officer and acted "under color of such office"—when he provided medical services at the clinic and/or the hospital.

**1**

While the general removal statute must be strictly construed, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941), both § 1442 and especially its "acting under" provision must be read broadly, *see Isaacson*, 517 F.3d at 136 ("The words 'acting under' are to be interpreted broadly, and the statute as a whole must be liberally construed."); *see also Crane Co.*, 771 F.3d at 115 ("The Supreme Court has cautioned that the scope of the federal officer removal statute 'is not narrow or limited.'") (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). Courts generally apply a broad construction—

particularly with respect to private parties who claim to be "acting under" a federal officer. *See Gurda Farms, Inc. v. Monroe Cty. Legal Assistance Corp.*, 358 F. Supp. 841, 843 (S.D.N.Y. 1973) ("Even a cursory survey of the application of the statute reveals it has been construed broadly, and its 'persons acting under' provision particularly so."). Not only must the words of § 1442 be construed broadly but a court also must "credit [the d]efendants' theory of the case" when evaluating the relationship between the defendants' actions and the federal officer. *Isaacson*, 517 F.3d at 137 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

Congress used the words "acting under" to describe "the triggering relationship between a private entity and a federal officer." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007). That relationship involves "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152. The Supreme Court has said, for example, that a private company acting pursuant to a contract with the federal government has this relationship. Indeed, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (emphasis omitted).

When "Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war," Dow Chemical acted under the United States. *Watson*, 551 U.S. at 153-54. Dow Chemical was "acting under" a federal officer because it "performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* at 154; *see also Papp v. Fore-Kast Sales Co.*, 842 F.3d 805,

11

812 (3d Cir. 2016) ("The classic case of such assistance as it relates to government contractors is when the private contractor acted under a federal officer or agency because the contractors helped the Government to produce an item that it needed.") (internal quotation marks and alterations omitted); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012) ("'Acting under' covers situations … where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."). In reaching its conclusion in *Watson*, the Supreme Court considered whether there had been a "delegation of legal authority" from the federal government to the private party or a "contract, … payment, … employer/employee relationship, or … principal/agent arrangement" between the federal government and the private party. 551 U.S. at 156.

A district court in our circuit previously concluded that "attorneys in an [Office of Economic Opportunity] funded legal services program" were "'persons acting under' a federal officer within the meaning of § 1442(a)(1)." *Gurda*, 358 F. Supp. at 843. The court identified prior cases in which courts had "upheld the removal of an action … against a private insurance company which had contracted with the federal government to administer benefit provisions of Medicare" and had "sustained the removal of a garnishment action against a doctor who treated patients under Medicare" because "the defendant had been acting under the direction of the Secretary of Health, Education, and Welfare." *Id.* at 844 (citing *Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532 (C.D. Cal. 1968), and *Allen v. Allen*, 291 F. Supp. 312 (S.D. Iowa 1968)). The court endorsed the view that "sound policy requires the availability of a federal forum for adjudication of the legal status of persons who colorably have been acting under federal direction" and found it

12

instructive that the private party had "performed work contemplated by a federal statute." *Gurda*, 358 F. Supp. at 844 (alteration omitted).

In a recent case, the Third Circuit concluded that the Federal Community Defender, "a non-profit entity created through the Criminal Justice Act that is delegated the authority to provide representation under the CJA," acted under a federal officer—the Administrative Office of U.S. Courts. *In re Commonwealth's Motion*, 790 F.3d at 469. The court explained that the Federal Community Defender was statutorily required to have "stated purposes [that] include implementation of the aims and purposes of the CJA" and to "adopt bylaws consistent with representation under the CJA and a model code of conduct similar to those governing Federal Public Defender Organizations." *Id.* Through its relationship with the federal government, "the Federal Community Defender 'assists' and helps the AO to '*carry out* the duties or tasks of a federal superior,' which is to implement the CJA and [18 U.S.C.] § 3599 through the provision of counsel to federal defendants and indigent federal habeas corpus petitioners." *Id.* (alteration omitted).

Even more recently, the Eleventh Circuit concluded that a non-profit utility cooperative acted under a federal officer because such cooperatives "exist to provide a public function conceived of and directed by the federal government," namely "bringing electricity to sparsely populated rural areas that would not otherwise receive electricity." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1143 (11th Cir. 2017).

Razmzan falls neatly into these precedents. He performed a job that—in the absence of the Federally Supported Health Centers Assistance Act and its provision for deeming health centers and their

staffs to be federal employees—the federal government would have had to perform itself: He assisted and helped to carry out the duties of the federal government to provide medical care to the indigent. *See* H.R. Rep. No. 104-398, at 5 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 767, 769 ("The Federal government makes primary health care services available to medically underserved populations …. [T]he Department of Health and Human Services (HHS) makes grants to public or private nonprofit entities to provide primary health care services to specified underserved populations, regardless of their ability to pay.").[3] "Cases in which the Supreme Court has approved removal involve defendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Ruppel*, 701 F.3d at 1181. This is such a case.[4]

Moreover, Razmzan received from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service, *see* Notice of Deeming Action, Supp. App'x 21-22, and he acted pursuant to an employment contract with

---

[3] *See also* H.R. Rep. No. 104-398, at 6 ("National Health Service Corps physicians … provide much of the staffing for [federally supported community] health centers."); H.R. Rep. No. 102-823, at 5 (1992), *as reprinted in* 1992 U.S.C.C.A.N. 2627, 2627 ("The Community and Migrant Health Centers are the largest users of National Health Service Corps (NHSC) physicians, and have historically depended on the program for more than one-half of their physical staff. Sixty-five percent of NHSC physicians are placed at the centers.").

[4] *See also* Health Res. & Servs. Admin., Agency Overview (last updated Jan. 2021), https://www.hrsa.gov/sites/default/files/hrsa/about/hrsa-agency-overview.pdf ("HRSA programs provide health care to people who are geographically isolated and those who are economically or medically vulnerable.").

a federally supported community health center, which itself is subject to detailed requirements and oversight by the federal government.[5]

**2**

Some courts also inquire into whether the person "acting under" a federal officer was "under the direct and detailed control of a federal agency or officer." *N.G. v. Downey Reg'l Med. Ctr.*, 140 F. Supp. 3d 1036, 1041 (C.D. Cal. 2015).[6] Even assuming that inquiry is required, Razmzan and the clinic that employed him would meet that test. HRHCare was obliged to submit a deeming application under 42 U.S.C. § 233(g)(1)(D) that certified its:

---

[5] *See* H.R. Rep. No. 102-823, at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation.").

[6] *See also Watson*, 551 U.S. at 153 ("[L]ower courts have held that Government contractors fall within the terms of the federal officer removal statute … [where the relationship] is an unusually close one involving detailed regulation, monitoring, or supervision."); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 989 (C.D. Ill. 2011) ("The moving party must also show that the claim 'depends on the defendant's following the directions issued by that federal officer.'"); *Freiberg v. Swinerton & Walberg Prop. Servs.*, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) ("The official must have direct and detailed control over the defendant."); *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993) ("'Direct control' is established by showing strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control."). *But see Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944-45 (7th Cir. 2020) ("It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the Companies and the federal government."); *Isaacson*, 517 F.3d at 137-38 ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred *while* Defendants were performing their official duties.").

(1) implementation of appropriate policies and procedures to reduce the risk of malpractice and litigation; (2) review and verification of professional credentials and privileges, references, claims history, fitness, professional review organization findings, and licensure status of health professionals; (3) cooperation with the Department of Justice (DOJ) in the defense of claims and actions to prevent claims in the future; and (4) cooperation with DOJ in providing information related to previous malpractice claims history.

Notice of Deeming Action, Supp. App'x 21-22. "In addition to the relevant statutory and regulatory requirements, every deemed health center is expected to follow HRSA's FTCA-related policies and procedures, which may be found online at http://www.bphc.hrsa.gov." *Id*. at 22. Those policies include a 94-page Health Center Program Compliance Manual, which imposes requirements for clinic operations including "Clinical Staffing," "Accessible Locations and Hours of Operation," "Continuity of Care and Hospital Admitting," and even "Board Composition."[7] The policies also include a 151-page Health Center Program Site Visit Protocol that provides for "Operational Site Visits" to occur "at least once per project/designation period" in order to verify "compliance with the Health Center Program."[8]

---

[7] Health Res. & Servs. Admin., U.S. Dep't of Health & Human Servs., Health Center Program Compliance Manual ("Compliance Manual") (last updated Aug. 20, 2018), *available at* https://bphc.hrsa.gov/sites/default/files/bphc/programrequirements/pdf/hc-compliance-manual.pdf.

[8] Health Res. & Servs. Admin., U.S. Dep't of Health & Human Servs., Health Center Program Site Visit Protocol at 1-2 (last updated Feb. 27, 2020), *available at* https://bphc.hrsa.gov/sites/default/files/bphc/programrequirements/pdf/site-visit-protocol.pdf.

Although Razmzan "did not have a contract directly with the United States," and instead "was providing services … pursuant to a subcontract," he was still acting under a federal officer. *Badilla v. Nat'l Air Cargo, Inc.*, No. 12-CV-1066, 2014 WL 6390324, at *2, *4-7 (W.D.N.Y. Nov. 17, 2014). [9] The federal government retained discretion to refuse to deem Razmzan an employee of the Public Health Service based on his *individual* failure to "comply with the policies and procedures that the [clinic] … implemented" to reduce malpractice. 42 U.S.C. § 233(i). It also regulated his employment by requiring the clinic to "provide the required primary and approved additional health services of the center through staff," Compliance Manual at 28, "utilize staff that are qualified by training and experience to carry out the activities of the center," *id*., "assess[] [Razmzan's] clinical competence and/or fitness for duty," *id*. at 29, and "review[] and verif[y]" Razmzan's "professional credentials, references, claims history, fitness, professional review organization findings, and license status," 42 U.S.C. § 233(h)(2).

In sum, Razmzan was "acting under" a federal officer because he performed work that, absent the program in which he participated, the government would have had to perform itself; his work assisted the mission of the federal agency that oversaw his work; and he was subject to federal oversight and control. The argument for his ability to remove his case is stronger than that of, for example, a private company acting under a contract with the government. Unlike a

---

[9] *Cf.* Restatement (Third) of Agency § 3.15 cmt. b (2006) ("When an agent is itself a corporation or other legal person, its officers, employees, partners, or members who are designated to work on the principal's account are subagents."); *id*. § 3.15 ("The relationship[] … between the subagent and the appointing agent's principal [is a] relationship[] of agency.").

contractor, the government actually treated Razmzan as the equivalent of a government employee for the purposes of immunity under § 233. Less has been held to suffice in other cases.[10]

In fact, contrary to its position in this case, the government itself has invoked § 1442 on behalf of deemed employees such as Razmzan. *See, e.g.*, *Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011); *Nichols v. Sabzwari*, No. 4:17-CV-01621, 2017 WL 6389634, at *1 (D.S.C. Nov. 13, 2017); *Gabriel v. Alger*, No. 14-CV-03022, 2015 WL 1042507, at *1 (D. Colo. Mar. 5, 2015); *Dominguez ex rel. Dominguez v. Verna*, No. 10-CV-4296, 2010 WL 4942225, at *3 (S.D.N.Y. Dec. 3, 2010). It did not err in doing so.

The contrast between this case and a prior case, in which a panel decided by summary order that a clinic was not "acting under" a federal officer, illustrates why appellate review is proper. In *Veneruso*, the court concluded that Mount Vernon Neighborhood Health Center, "a federal grant recipient under the Public Health Service Act," was not acting under a federal officer when it received distributions from a joint venture partner in violation of New York law. 586 F. App'x at 605-08. The court explained that "Mount Vernon does not and cannot contend that any of the many federal regulations to which it is subject directed it to receive … the [illegal]

---

[10] *See, e.g.*, *Gates v. A.O. Smith Water Prods. Co.*, No. 3:13-CV-1435, 2014 WL 104965, at *3 (N.D.N.Y. Jan. 9, 2014) (noting that allegations that "contracts were governed by an extensive set of federal standards and specifications and that the Navy was involved in the design and manufacture of equipment, including valves, from Crane" were sufficient "to show that Crane acted 'under' Naval authorities in building and supplying components, including valves, to assist the Navy in producing naval vessels").

18

[d]istributions." *Id*. at 608. The implication is that if federal regulations had directed the challenged conduct, the clinic would have been acting under a federal officer and removal would have been appropriate. That is the case here. In this case, 42 U.S.C. § 254b identifies "obstetrics [and] gynecology" as "required primary health services" that the clinic was required to provide in order to receive PHS grants, *see* 42 U.S.C. § 254b(k)(3)(A), and to "maintain coverage as a deemed PHS employee," Notice of Deeming Action, Supp. App'x 22. Thus, Razmzan's challenged conduct was directed by federal regulation and he was acting under a federal officer.

**3**

Although this reading of § 1442 would permit deemed PHS employees to remove cases under § 1442, in addition to § 233, it would not render § 233 superfluous because removal under § 233 provides different rights to the removing party than does removal under § 1442. *Contra K.C. v. Cal. Hosp. Med. Ctr.*, No. 2:18-CV-06619, 2018 WL 5906057, at *6 (C.D. Cal. Nov. 8, 2018).

District courts in this circuit have considered removal under the Westfall Act, 28 U.S.C. § 2679, a provision similar to § 233, and its relationship to removal under § 1442. Those courts have recognized that there may be "two 'separate and alternative statutes, both of which authorize removal of cases to federal court.'" *Charles v. Inam*, No. 99-CV-12427, 2001 WL 79900, at *2 (S.D.N.Y. Jan. 30, 2001). [11] Although two removal statutes may be "largely overlapping, the

---

[11] *See also Thornton-Burns Owners Corp. v. Navas*, No. 13-CV-4241, 2014 WL 1392026, at *4 (E.D.N.Y. Apr. 9, 2014); *A.Q.C. ex rel. Castillo v. Bronx-Lebanon Hosp. Ctr.*, No. 11-CV-2656, 2012 WL 170902, at *4 (S.D.N.Y. Jan. 20, 2012); *De Masi v. Schumer*, 608 F. Supp. 2d 516, 522-23 (S.D.N.Y. 2009).

19

distinction between the two provisions is important." *A.Q.C.*, 2012 WL 170902, at \*4.

The distinctions are no less important here. First, a case may be removed pursuant to § 1442 only "within 30 days" of receipt of the initial pleading. 28 U.S.C. § 1446. This time limitation may be waived by the other parties, but an untimely removal under § 1442 remains subject to objection from those parties. By contrast, a case may be removed under § 233 "at any time before trial." 42 U.S.C. § 233.[12] This extra time allows defendants to report the case to the Attorney General and to learn whether the Attorney General will certify their immunity from suit before deciding whether they must remove the case by themselves. Second, a party who removed pursuant to § 1442 is entitled to appeal an order remanding the case for lack of subject matter jurisdiction. 28 U.S.C. § 1447(d). By contrast, a party who removed pursuant to § 233 has no such right to appeal. *See id.* Third, a party who removed pursuant to § 233(*l*)(2) is entitled to an automatic stay of proceedings in the state court, while a party who removed pursuant to § 1442 is not.

Had Congress not enacted § 233—and had there been a timely motion to remand after Razmzan's untimely removal under § 1442—Razmzan may not have been able to have his colorable federal defense adjudicated by a federal court. We are not faced with that situation, given the waiver of the timeliness objection,[13] but it demonstrates that this reading of § 1442 does not render § 233 superfluous.

---

[12] *See also A.Q.C.*, 2012 WL 170902, at \*4 (noting the distinction between a statute that permits removal "at any time before trial" and § 1442, with its thirty-day time limitation).

[13] We address the timeliness of the removal *infra* in Part I.C.

The government appears to be aware that removal under § 1442 and removal under § 233 provide different rights because the government has removed cases under *both* statutory provisions rather than relying only on § 233. *See, e.g.*, *Nichols*, 2017 WL 6389634, at *1; *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, at *1 (E.D.N.Y. Jan. 31, 2012); *Oviedo*, 655 F.3d at 422; *Dominguez*, 2010 WL 4942225, at *3.

In general, § 233 lays out a detailed scheme requiring reporting to the Attorney General, intervention by the Attorney General, and an automatic stay in the state court. Only one element of that scheme—the first sentence of § 233(*l*)(2), permitting removal—might overlap with § 1442. It is not obvious that this small overlap would require us to modify what would otherwise be the natural reading of § 1442 based on the *lex specialis* canon. But it is not a pure overlap because, as explained above, removal under each provision has different consequences. *See In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.*, 644 F. App'x 515, 530 (6th Cir. 2016) (noting that a court has "no occasion to apply the canon of *lex specialis derogat legi generali*" when each statute "has its own scope and purpose" and the two statutes "do not conflict"). For that reason, it is natural to understand § 233 as providing supplemental removal rights to persons in a specific situation, even though such persons also may sometimes remove under § 1442.

**B**

The government argues that even if Razmzan could qualify for removal under § 1442, he failed to invoke that statute in his notice of removal. Under 28 U.S.C. § 1446, Razmzan was required to provide "a short and plain statement of the grounds for removal" in his notice

of removal. *See Georgia v. Rachel*, 384 U.S. 780, 793 n.21 (1966). This requirement was "borrowed from the pleading requirement set forth in Federal Civil Rule 8(a)." 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3733 (rev. 4th ed. 2020). By adopting it, "Congress … intended to simplify the pleading requirements for removal and to clarify that courts should apply the same liberal rules [to removal allegations] that are applied to other matters of pleading." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (internal quotation marks omitted). Thus, "the same liberal rules employed in testing the sufficiency of a pleading should apply to appraise the sufficiency of a defendant's notice of removal." Wright & Miller, *supra*, § 3733; *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) (concluding that "it was inappropriate" to impose "a higher pleading standard" on a notice of removal "than the one imposed on a plaintiff in drafting an initial complaint").

Accordingly, "[t]he absence of detailed grounds setting forth [a] basis for removal is not fatal to defendants' right to remove." *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962). To invoke § 1442, "the allegation that petitioners were officers acting under color of office in the employment of the United States [is] sufficient." *Id.* It is enough "if the court is provided the facts from which its jurisdiction can be determined." Wright & Miller, *supra*, § 3733.[14]  A petition may

---

[14] For that reason, a party's failure "to make reference to an applicable removal provision in [a] removal petition is not fatal … but instead is merely a technical defect." *Mignogna v. Sair Aviation, Inc.*, 679 F. Supp. 184, 187 (N.D.N.Y. 1988); *see also Jurist v. Long Island Power Auth.*, No. 19-CV-3762, 2020 WL 1149750, at *7 n.9 (E.D.N.Y. Mar. 10, 2020) ("[F]ailure to explicitly invoke section 1442(a)(1) in the Amended Notice of Removal does not preclude the Court from finding removal proper under that section.");

even "contain inconsistent allegations." *White v. Wellington*, 627 F.2d 582, 587 (2d Cir. 1980).

Our court has stated that when "determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal." *In re MTBE Prods. Liab. Litig.*, 488 F.3d at 124. Because a case may be "properly removed … under 28 U.S.C. § 1442(a)(1)" even though a party "failed to do so according to the timeliness provisions of § 1446(b)," we need only decide whether Razmzan alleged the "three necessary elements for removal under § 1442(a)(1)." *Pantalone*, 576 F. Supp. 2d at 329, 334-35.[15] "To invoke [§ 1442], a defendant who is not himself a federal officer must [allege] that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable federal defense.'" *Crane Co.*, 771 F.3d at 115 (quoting *Isaacson*, 517 F.3d at 135). Razmzan meets these requirements.

First, Razmzan alleged that he was a "person." *See* Notice of Removal ¶¶ 1-2, 28, Supp. App'x 1-2, 8-9 ("Defendant Dr. Shahram Razmzan is, and at all times relevant to this action was, a physician licensed by the State of New York to practice obstetrics and

---

*Harlem River Produce Co. v. Aetna Cas. & Sur. Co.*, 257 F. Supp. 160, 164 (S.D.N.Y. 1965) (same).

[15] "[A]ll of the circuit courts that have considered the question have concluded that a district court is prohibited from remanding a case *sua sponte* based on a procedural defect absent a motion to do so from a party." *Ellenburg*, 519 F.3d at 198. Moreover, remand based "on a defect in removal procedure—such as the untimeliness of removal—must be effected 'within 30 days after the filing of the notice of removal.'" *Cassara v. Ralston*, 832 F. Supp. 752, 753 (S.D.N.Y. 1993). No party moved for remand during the thirty-day period following Razmzan's notice of removal. *See infra* Part I.C.

gynecology."). Second, he alleged that he acted "under color of federal office." *See* Notice of Removal ¶¶ 2, 37-40, Supp. App'x 2, 11-12 ("As an employee of HRHCare, Dr. Razmzan is deemed to be a federal PHS employee and immune from civil actions arising out of the performance of his medical, surgical, or related functions within the scope of his employment with HRHCare."). Third, he alleged a "colorable federal defense." *See* Notice of Removal ¶¶ 4-6, 22-23, 39-40, Supp. App'x 2-3, 7-8, 11-12 ("Section 233(a) extends absolute immunity to PHS personnel by making the remedy against the United States under the FTCA the *exclusive* remedy for such actions."). Finally, he explicitly invoked 28 U.S.C. § 1442(a)(1) as a ground for removal. *See* Notice of Removal ¶ 47, Supp. App'x 14 ("Pursuant to 42 U.S.C. § 233(*l*)(2), 28 U.S.C. § 2679(d)(3), and 28 U.S.C. § 1442(a)(1), Dr. Razmzan is authorized to, and hereby does, remove to this Court the civil action."). Under the pleading standards for a notice of removal, these allegations are sufficient.

## C

Finally, the government argues that even if Razmzan qualified for removal under § 1442 and adequately pleaded grounds for removal under that statute in his notice of removal, his removal under § 1442 would be procedurally defective because of the timing requirements of 28 U.S.C. § 1446. Generally, the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading." 28 U.S.C. § 1446(b). Here, Agyin's complaint was filed on February 25, 2016. Verified Compl., Supp. App'x 41. Razmzan, however, did not file the notice of removal until June 21, 2017. Notice of Removal, Supp. App'x 14.

24

But that deadline does not end our analysis. The thirty-day time limitation "is 'merely a formal and modal requirement and is not jurisdictional.'" *Somlyo v. J. Lu-Rob Enters.*, 932 F.2d 1043, 1046 (2d Cir. 1991) (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)). Therefore, if an opposing party does not object to an untimely notice of removal by timely filing a motion to remand, the objection is waived. *See id.*; *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) ("[T]he time limitation for removal is not jurisdictional; it is merely modal and formal and may be waived.").[16]

The motion to remand must be filed within thirty days of the filing of the notice of removal. *See* 28 U.S.C. § 1447(c) ("A motion to

---

[16] *See also Connecticut v. Williams*, No. 3:17-CV-02023, 2018 WL 1532608, at *4 n.5 (D. Conn. Mar. 29, 2018) ("The thirty-day deadline for filing is waivable and does not affect whether the Court has subject matter jurisdiction. … 'Although the time limit is mandatory and a timely objection to a late petition will defeat removal, a party may waive the defect or be estopped from objecting to the untimeliness by sitting on his rights.'") (quoting *Fristoe*, 615 F.2d at 1212); *Bedminster Fin. Grp. v. Umami Sustainable Seafood, Inc.*, No. 12-CV-5557, 2013 WL 1234958, at *2 (S.D.N.Y. Mar. 26, 2013) ("It is 'well-established that the time limitation for removal and/or joinder of all defendants is not jurisdictional, and may be waived' by plaintiffs."); *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 328 (S.D.N.Y. 2005) ("[C]ourts have determined that § 1446(b)'s … time limitation is procedural; therefore, plaintiff must move for remand within thirty days of removal or the untimeliness of removal is waived."); *Legal Aid Soc'y v. City of New York*, No. 97-CV-7566, 1998 WL 689950, at *1 (S.D.N.Y. Sept. 30, 1998) ("Because the time limit is not jurisdictional, it may be extended in light of evidence of waiver or estoppel on the part of the plaintiff."); *Hartford Ins. Co. v. Compania Dominicana de Aviacion*, No. 90-CV-0622, 1990 WL 198744, at *3 (E.D.N.Y. Nov. 19, 1990) ("The thirty day requirement in § 1446(b) is not jurisdictional. Moreover, failure to challenge a non-jurisdictional defect in a removal petition can amount to a waiver.") (internal citations omitted).

remand the case on the basis of any defect other than the lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."); *Zerafa*, 403 F. Supp. 2d at 328 ("[P]laintiff must move for remand within thirty days of removal or the untimeliness of removal is waived."). In this case, no party filed such a motion or otherwise objected to the timeliness of Razmzan's removal—until oral argument in this case, two and a half years after the notice of removal was filed.

Accordingly, even if Razmzan's removal under § 1442 was untimely, any objection to that untimeliness has been waived. *See Leininger*, 705 F.2d at 729 ("It is undisputed that the suit was not timely removed. … At no time has either party moved to remand …. Thus the parties have waived the time limitation for removal.").

**D**

Because Razmzan properly removed this case from state court under 28 U.S.C. § 1442 and the procedural defects the government has identified in that removal notice do not alter our jurisdiction, we may address the merits of this appeal.[17]

The government suggests that we may review the remand order "only to the extent it addresses the removal bases explicitly excepted from § 1447(d)—in this case, removal under 28 U.S.C.

---

[17] The government filed notices of supplemental authority identifying *K.C. ex rel. Dunmore v. Khalifa*, 816 F. App'x 111 (9th Cir. 2020), and *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195 (11th Cir. 2020), for the proposition that 28 U.S.C. § 1447(d) bars appellate review of remand orders in cases removed under 42 U.S.C. § 233. But, as explained in Parts I.A. and I.B., Razmzan removed this case under 28 U.S.C. § 1442, thus qualifying for an exception from § 1447(d)'s bar. Accordingly, *Khalifa* and *Thomas* do not affect our analysis in this case.

§ 1442." Letter from Audrey Strauss, Acting U.S. Att'y for the S.D.N.Y., to Catherine O'Hagan Wolfe, Clerk of Ct. (July 16, 2020), ECF No. 140 (quoting *Bd. of Cnty. Comm'rs v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 819 (10th Cir. 2020)). In *Suncor Energy*, however, the Tenth Circuit determined that the appellant had *not* properly removed the case under § 1442. 965 F.3d at 819-27. The court then concluded that because removal under § 1442 was not proper, it did not have appellate jurisdiction to review the district court's dismissal of the appellant's other theories of removal (which were not independently reviewable under § 1447(d)). *Id*. at 819.

The Tenth Circuit cited our decision in *State Farm Mutual Auto Insurance Co. v. Baasch*, 644 F.2d 94, 97 (2d Cir. 1981), among other cases, for this proposition. *Id*. at 802. In *Baasch*, we dismissed an appeal because the case had not been properly removed under either § 1442 or § 1443.[18] Neither *Suncor* nor *Baasch* addresses the question in this case: whether, after we conclude that removal under § 1442 was proper, we may proceed to review the rest of the district court's remand order dealing with subjects other than an alternative theory of removal. In each of those cases, the court rejected the defendant's § 1442 or § 1443 removal arguments. *See Suncor*, 965 F.3d at 827 ("ExxonMobil failed to establish proper grounds for federal officer removal."); *Baasch*, 644 F.2d at 97 ("Baasch's case does not come near

---

[18] We note that the issue in *Suncor* is pending before the Supreme Court in *BP P.L.C. v. Mayor & City Council of Balt.* (No. 19-1189). The government in that case has argued that under § 1447(d) "[t]he entire 'order' remanding th[e] case—and not just certain parts of the reasoning supporting the remand—is … 'reviewable by appeal.'" Br. for the U.S. as Amicus Curiae Supporting Petr'rs at 8, *BP P.L.C. v. Mayor & City Council of Balt.*, 2020 WL 5847132 (2020) (No. 19-1189) (quoting 28 U.S.C. § 1447(d)).

to meeting the Supreme Court's limited criteria for invoking the civil rights removal statute."); *see also Mayor & City Council of Balt. v. BP P.L.C.*, 952 F.3d 452, 468 (4th Cir. 2020) ("[T]he relationship between Baltimore's claims and any federal authority over a portion of certain Defendants' production and sale of fossil fuel products is too tenuous to support removal under § 1442.").

Here, by contrast, Razmzan was entitled to remove the case under § 1442. Section 1447(d) permits us to review "an order remanding a case to the State court from which it was removed pursuant to section 1442." Thus, we may review the merits of Razmzan's appeal of the district court's order.[19]

## II

Razmzan is entitled to immunity from suit and to substitution of the United States as the defendant if this suit concerns actions he took within the scope of his employment as a deemed federal employee. *See* 42 U.S.C. § 233(a). Under § 233, the remedy for personal injury resulting from medical malpractice by a deemed employee acting within the scope of his employment is set out by 28 U.S.C. § 1346(b), the FTCA. The parties agree that under the FTCA, New York law governs the scope-of-employment analysis. They also agree that New York law prescribes a fact-dependent multi-factor inquiry

---

[19] The government argues that the Supreme Court's decision in *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007), along with the district court's conclusion that it lacked subject matter jurisdiction over this case, precludes the exercise of appellate jurisdiction. But the government's reliance on *Powerex* is inapposite because *Powerex* was decided before § 1447(d) was amended to exclude from its jurisdictional bar cases "removed pursuant to section 1442." *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 (2011).

for determining whether an act was performed within an employee's scope of employment. Razmzan argues that under New York law, the medical services he provided with respect to the delivery were within the scope of his employment even though he billed for his services privately. The government disagrees, arguing that because Razmzan billed for his services privately, his actions did not benefit HRHCare and he acted outside the scope of his employment. The district court agreed with the government, in part based on its reading of 42 C.F.R. § 6.6 and the FTCA Manual's policy on alternative billing arrangements. Yet neither 42 C.F.R. § 6.6 nor the FTCA Manual purports to alter New York's scope-of-employment analysis. Indeed, neither the regulation nor the manual would be able to alter the application of that state-law test. Razmzan is correct that he provided delivery services within the scope of his employment under New York law.

## A

Under the FSHCAA, deemed PHS employees are entitled to immunity under 42 U.S.C. § 233(a). That section provides that the exclusive remedy for damage for personal injury resulting from medical malpractice is prescribed by the FTCA. Under the FTCA, the "law of the place" governs the scope-of-employment analysis. *See* 28 U.S.C. § 1346(b)(1); *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). The "law of the place" here is New York law because the relevant conduct took place in New York. *See id.*; *Taber v. Maine*, 67 F.3d 1029, 1033 (2d Cir. 1995). Under New York law, "an employee acts within the scope of his employment when (1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer." *Fountain*, 838 F.3d at 135 (internal

quotation marks and alteration omitted). To determine whether "the employee is doing something in furtherance of the duties he owes to his employer":

> we must consider (1) the connection between the time, place and occasion for the act; (2) the history of the relationship between the employer and employee as spelled out in actual practice; (3) whether the act is one commonly done by such an employee; (4) the extent of departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated.

*Sharkey v. Lasmo (AUL Ltd.)*, 992 F. Supp. 321, 329 (S.D.N.Y. 1998) (citing *Riviello v. Waldron*, 47 N.Y.2d 297, 303 (1979)). An employee must also act at least "in part to benefit the employer." *Id.*

We conclude that Razmzan was acting within the scope of his employment when he performed the delivery services. Razmzan was fulfilling his contractual duties to HRHCare—pursuant to a contract that HRHCare designed for its own benefit—and HRHCare benefited from his private billing by being able to retain an experienced OB/GYN and to secure inpatient treatment for its patients. App'x 66-67. He delivered Agyin's twins "as a result of his employment contract with HRHCare," Supp. App'x 11, the day after he treated her at one of HRHCare's clinical locations. His private billing was anticipated by HRHCare in that contract; as the district court explained, HRHCare "agreed on an employment contract that would compensate him … indirectly for the inpatient services he rendered to the center's patients." App'x 66. In fact, Razmzan maintained a separate billing account specifically for inpatient services provided to HRHCare patients at a hospital. Supp. App'x 10.

30

Moreover, the district court noted that "this arrangement was designed to benefit HRH[Care] by shifting the risk of not having sufficient volume of inpatient services to support the fixed salary that HRH[Care] would have … had to pay to secure the doctor's inpatient services for its patients." App'x 67. Therefore, "[i]t was in HRHCare's interest and benefit to assign Dr. Razmzan the rights to revenue for inpatient services rather than having to pay a fixed salary with the risk that it would either overpay or underpay Dr. Razmzan for inpatient services." *Id*. Because Razmzan was acting in furtherance of the duties he owed HRHCare when he provided delivery services at the hospital and billed privately, and because he acted at least in part to benefit HRHCare, he acted within the scope of his employment under New York law.

**B**

The district court rejected this conclusion, in part, based on its reading of four cases: *Delgado v. Our Lady of Mercy Med. Ctr.*, No. 06-CV-5261, 2007 WL 2994446, at *3 (S.D.N.Y. Oct. 12, 2007), *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-CV-1106, 2012 WL 294518, at *3 (E.D.N.Y. Jan. 31, 2012), *Miller v. Toatley*, 137 F. Supp. 2d 724, 726 (W.D. La. 2000), and *Lacey-Echols ex rel. Lacey v. Murphy*, No. 02-CV-2281, 2003 WL 23571269, at *3 (D.N.J. Dec. 17, 2003). Each case addresses scope-of-employment determinations for doctors who treated patients at a hospital, like Razmzan did here. Even accepting these cases as persuasive authority, none requires the conclusion that Razmzan acted outside the scope of his employment.

In *Lacey-Echols*, the court held that a doctor acted outside the scope of his employment when he "directly billed and accepted fees" from hospitalized patients. 2003 WL 23571269, at *3. Unlike Razmzan,

31

the doctor in *Lacey-Echols* did not have a written employment contract that would permit the court to conclude that he was treating patients within "the scope of his employment at [the center] … rather than [as] a physician in private practice." *Id*. at *2, *8. Similarly, in *Miller*, the court denied immunity to a doctor whose contract required "[p]ayment for care [to] be billed through [the center]" but who billed for services privately. 137 F. Supp. 2d at 726. Unlike that doctor, who violated his contract by billing privately for hospital services, Razmzan *adhered* to his contract by billing privately for the hospital services in this case.

Neither *Rosenblatt* nor *Delgado* involved doctors who billed privately for hospital services. *See Rosenblatt*, 2012 WL 294518, at *3 ("[F]or her treatment of Monzon, Dr. Rahman only received the regular compensation she gets from the Center."); *Delgado*, 2007 WL 2994446, at *3 ("Yara was not compensated for the treatment he provided Delgado apart from the regular compensation he receives as an employee of Soundview."). In these cases, the scope-of-employment determination turned on the employment relationship between the community health center and the doctor. *See Rosenblatt*, 2012 WL 294518, at *3, *6-8; *Delgado*, 2007 WL 2994446, at *3. Because neither case involved a doctor who billed privately for hospital services, neither case stands for the proposition that a doctor necessarily acts outside the scope of his or her employment by billing privately. Accordingly, the cases on which the district court relied do not justify a departure from New York law regarding Razmzan's scope of employment.

## C

Neither 42 C.F.R. § 6.6 nor the FTCA Manual undermine this result. Section 6.6 states that "[w]ith respect to covered individuals, only acts or omissions within the scope of their employment … are covered." 42 C.F.R. § 6.6(c); *see also id.* § 6.6(d) ("Only acts and omissions related to the grant-supported activity of entities are covered."). The regulation therefore restates the proposition that the FSHCAA provides immunity only for conduct undertaken within the scope of the defendant's employment. *See* 42 U.S.C. § 233(a), (g). As explained above, Razmzan's provision of delivery services was within the scope of his employment at HRHCare and in furtherance of HRHCare's grant-supported activities. Accordingly, 42 C.F.R. § 6.6 does not alter our conclusion with respect to the scope-of-employment analysis.

The FTCA Manual may suggest a different conclusion. *See* FTCA Manual, *supra* note 1, at 13 ("FTCA coverage will apply to the provider … as long as … [t]he funds received by the provider … are transferred directly to the health center."). But to the extent the FTCA Manual attempts to alter the scope-of-employment analysis, it is not entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). A guidance document such as the FTCA Manual is entitled to deference depending "upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140; *see Estate of Landers v. Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008). "Yet even under this approach, courts will not rely on agency interpretations that are inconsistent with unambiguous statutory language." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 510 (2d Cir. 2017). The FTCA is

unambiguous that Razmzan's scope of employment is to be determined by New York law. 28 U.S.C. § 1346(b)(1); *see also Fountain*, 838 F.3d at 135. A guidance document published by HHS cannot alter that unambiguous directive. Accordingly, we look to New York law to determine whether Razmzan acted within the scope of his employment.

A federal agency may receive deference with respect to the interpretation of a federal statute it administers. *See United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001). New York's law regarding the scope of employment is not such a statute, and therefore the FTCA Manual could not alter how a court applies that law even if it attempted to do so. For these reasons, we do not defer to the FTCA Manual either with respect to the application of § 1346 or with respect to the application of New York law on the scope of employment.

## CONCLUSION

For these reasons, we **REVERSE** the district court's order in part and **REMAND** for further proceedings consistent with this opinion.[20]

---

[20] Because we reverse the relevant portion of the district court's remand order, we do not address Razmzan's arguments about the district court's denial of his motion for reconsideration.